Nos. 78,516
78,541

STATE OF KANSAS, *Appellee,* v. HERBERT L. RUFF, *Appellant.*
(967 P.2d 742)

28

Opinion filed October 30, 1998.

*Mary Curtis*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with her on the brief for appellant.

*Frank E. Kohl*, county attorney, argued the cause, and *Carla J. Stovall*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Three years after defendant was charged with several rapes, he was convicted and sentenced for two rapes. Defendant appealed, claiming his statutory and constitutional rights to a speedy trial were violated and there was no probable cause to obtain a warrant to search his home and automobile.

Several complaints were filed against Ruff resulting from a number of violent rapes committed in the City of Leavenworth. The crimes charged in 93 CR 444 were alleged to have occurred on March 4, 1993. The crimes charged in 93 CR 445 were alleged to have occurred on December 9, 1992. The two cases were consolidated and tried to a jury. In this appeal, Ruff does not challenge the sufficiency of the evidence; therefore, the facts stated are those relevant to the legal issues on appeal.

Prior to Ruff's arrest, an anonymous TIPS hotline caller implicated Ruff in several rapes. Following the tip, police interviewed Ruff, and Ruff provided a blood sample to the police. Preliminary lab results indicated Ruff's blood type matched the DNA samples taken from the persons of the rape victims and their clothing.

Based on the blood test evidence and other facts stated in the affidavit for the search warrant, the police obtained warrants to search Ruff's house and automobile. During the search, the police seized several items including a roll of duct tape, a stocking mask, a knife, and a stocking which had been cut to resemble a mask. Based on the accounts of the rape victims, these items were highly probative in the developing case against Ruff. Separate complaints charging the defendant with various rapes and other included offenses were filed by the State. Ruff was arrested. He was brought before a magistrate on September 27, 1993.

Ruff was tried to a jury on October 15, 1996, and found guilty of all counts charged. For the convictions in 93 CR 445, Ruff was sentenced to consecutive terms of 15 years to life for rape, 15 years to life for aggravated robbery, and 5 to 20 years for aggravated burglary. For the convictions in 93 CR 444, Ruff was sentenced to consecutive terms of 15 years to life for the crime of rape, 15 years to life for each of two convictions of aggravated criminal sodomy, 15 years to life for aggravated robbery, 5 to 20 years for aggravated burglary, 5 to 20 years for aggravated battery. The sentences in 93 CR 444 were ordered to run consecutive to the sentences in 93 CR 445. Ruff appealed, claiming his statutory and constitutional rights to a speedy trial were violated and there was no probable cause to obtain a warrant to search his property; therefore, the

evidence seized in the search of his home and automobile should have been suppressed.

## STATUTORY RIGHT TO SPEEDY TRIAL

K.S.A. 22-3402(1) provides:

"If any person charged with a crime and held in jail solely by reason thereof shall not be brought to trial within ninety (90) days after such person's arraignment on the charge, such person shall be entitled to be discharged from further liability to be tried for the crime charged, unless the delay shall happen as a result of the application or fault of the defendant, or a continuance shall be ordered by the court under subsection (3)."

Ruff alleges that he was arraigned on September 27, 1993, and asserts that the State failed to bring him to trial within 90 days. We note that separate complaints were filed in case No. 93-CR-444 and case No. 93-CR-445 on September 24, 1993. The appearance docket does note that on September 27, 1993, Ruff appeared before the court, and the word "[a]rraigned" is included in the notation.

An arraignment in a criminal proceeding is the formal act of calling the defendant before a court having jurisdiction to impose sentence for the offenses charged in the information and asking defendant how he or she pleads to the charges. *State v. Smith*, 247 Kan. 455, Syl. ¶ 3, 799 P.2d 497 (1990). At the September 27, 1993, proceeding, Ruff was informed of the charges against him, and the terms and conditions of the appearance bonds for each case were set. That proceeding was not an arraignment but was Ruff's initial appearance before a magistrate pursuant to K.S.A. 22-2901.

Two years later, on November 16, 1995, the district court conducted a preliminary examination and found that the evidence supported a finding that it appeared that the offenses had been committed and that there was probable cause to believe they had been committed by Ruff. Ruff was bound over for arraignment on the charges. Arraignment was set for November 27, 1995. An information charging the crimes was filed by the State on November 27, 1995. The court records note Ruff was arraigned on that date.

Therefore, it is clear that Ruff was arraigned on November 27, 1995, not September 27, 1993.

After Ruff's initial appearance on September 27, 1993, but prior to his arraignment on November 27, 1995, Ruff was tried and convicted for a separate rape, 93 CR 267. He was convicted on July 12, 1995, and sentenced to three consecutive terms: two terms of 15 years to life and one term of 5-10 years. Therefore, Ruff was incarcerated for prior convictions at the time of the arraignment in the instant case on November 27, 1995, and remained incarcerated until he was tried by a jury on October 15, 1996.

The statutory right to a speedy trial applies to defendants who are charged with a crime and held to answer on an appearance bond or charged with a crime and held in jail solely by reason of the subject criminal charge. K.S.A. 22-3402(1) and (2). The statutory time for a speedy trial normally commences on the date of arraignment. See *Smith*, 247 Kan. 455, Syl. ¶ 2. The statutory right to a speedy trial does not apply to a criminal defendant who is held in custody for any reason other than the subject criminal charge. *State v. Mathenia*, 262 Kan. 890, 900, 942 P.2d. 624 (1997). As noted, from arraignment to trial in this case, Ruff was and is now incarcerated for a conviction of rape in the separate case. Therefore, Ruff's statutory right to a speedy trial does not apply here.

## CONSTITUTIONAL RIGHT TO SPEEDY TRIAL

The Sixth Amendment to the United States Constitution guarantees the accused in a criminal prosecution a speedy trial. The constitutional right to a speedy trial attaches when an individual becomes an "accused." *State v. Schlicher*, 230 Kan. 482, 486, 639 P.2d 467 (1982). The test to determine whether an accused has been denied the constitutional right to a speedy trial was stated in *Barker v. Wingo*, 407 U.S. 514, 33 L. Ed. 2d 101, 92 S. Ct. 2182 (1972). The *Barker* factors are: the length of the delay, the reason for the delay, the defendant's assertion of the right, and prejudice to the defendant. *Barker*, 407 U.S. at 530. Kansas adopted the *Barker* four-point test in *State v. Otero*, 210 Kan. 530, 532-33, 502 P.2d 763 (1972).

## Length of Delay

A determination of a constitutional violation of an accused's right to a speedy trial depends on the facts and circumstances of each case, and the mere passage of time is not determinative. *Schlicher*, 230 Kan. at 487. The length of delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. *Barker*, 407 U.S. at 530. See *State v. Green*, 260 Kan. 471, 474, 920 P.2d 414 (1996).

We generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify. While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria, it is part of the mix of relevant facts, and its importance increases with the length of delay. *State v. Vaughn*, 254 Kan. 191, 198, 865 P.2d 207 (1993).

We have noted that *Barker* mandates an ad hoc approach in which each case is analyzed according to its particular circumstances. *State v. Fitch*, 249 Kan. 562, 564, 819 P.2d 1225 (1991). In *Fitch* we reviewed a variety of speedy trial violation claims and determined that, under the facts, lengths of delay from 1 to 5 years had not violated the defendant's right to a speedy trial. *Fitch*, 249 Kan. at 564.

The time lapse between Ruff's arrest and the trial was approximately 3 years. A delay of 3 years is significant, warranting a consideration of the other *Barker* factors.

## Defendant's Assertion of the Right to a Speedy Trial

The State points out that the primary factor that impeded the progress of the case was Ruff's trial and conviction in the intervening rape case. The State contends that after Ruff's arrest, to avoid the prejudice associated with having a large number of charges before the jury, Ruff insisted on separate trials for each rape case. The record does not support the State's contention that Ruff requested separate trials. We note that the State chose to file separate complaints. In addition, the record indicates Ruff moved the court on several occasions for an order of dismissal of the

charges against him based on a violation of his right to speedy trial. On November 9, 1995, Ruff wrote a letter to the court asking the court to conduct a single preliminary examination and consolidate all cases of rape pending against him and try them together.

## Reason for Delay

The appearance docket in this case not only includes the activity in the instant case but also the activity in 93 CR 267, the intervening rape case. It is clear from the notations in the court records that significant delays in the trial are attributed to several factors: the State's use of DNA evidence, Ruff's independent DNA analysis, the use of DNA experts to interpret the analysis, Ruff's competency evaluations, and Ruff's discharging of and the court's appointment of several different defense attorneys to represent Ruff.

The most significant cause of delay to the trial of this case was Ruff's trial and conviction in 93 CR 267, the other rape case. Immediately after the sentencing in that case, the activity in this case began to move toward preliminary hearing at a swifter pace, but not without any further delay, due largely to changes in Ruff's defense counsel. The court records indicate that during the course of the case, Ruff discharged or moved the court to discharge four attorneys. After each appointment of a new attorney to represent the defendant, continuances were granted to provide the newly appointed attorney an opportunity to meet with Ruff and prepare for trial.

Clearly, the complexity of the DNA evidence, numerous changes in defense attorneys, and the intervening rape trial slowed the progress of this case to an extraordinary degree. However, it does not appear from the record that the State purposefully engineered the delays, and it does appear that a majority of the continuances can be attributed to Ruff. Under the circumstances, there was no excessive delay in bringing Ruff to trial.

## Prejudice

The *Barker* court indicated three factors which may show prejudice to the defendant: oppressive pretrial incarceration, anxiety and concern of the accused, and, most important, impairment of

the defense. *Barker*, 407 U.S. at 532. Ruff alleges none of these factors.

Ruff contends that the delay caused by the intervening rape trial was prejudicial to him because the intervening rape conviction was included in his criminal history for sentencing in this case. He asserts the intervening conviction increased his sentences in this case and allowed the trial judge to order that his sentences be served consecutive to the sentences in the intervening case.

Ruff does not show the effect of the intervening convictions on his sentences in this case. Any effect of the prior conviction must be weighed against the result if this case had been tried first and those convictions considered in Ruff's criminal history at sentencing in the intervening case. It is unnecessary to consider such a calculation because the prejudice to be avoided by undue delay goes to the mental, emotional, and physical stresses on a presumptively innocent defendant and the defendant's diminished ability to defend against the charges with the passage of time. See *Barker*, 407 U.S. at 532-33. Therefore, Ruff has failed to demonstrate how the delay caused by the intervening case prejudiced his right to a speedy trial in this case.

In sum, while the length of the delay in bringing Ruff to trial was significant, the reasons were largely chargeable to Ruff and the difficulties inherent in having more than one case pending against a defendant. Clearly, Ruff asserted his right to a speedy trial on several occasions, but he did not then and does not now, demonstrate prejudice caused by the delay sufficient to warrant dismissal of the case. Furthermore, there is no evidence that the State neglected the case or manipulated the delay. Therefore, Ruff's constitutional right to a speedy trial was not violated.

## SUPPRESSION OF EVIDENCE

The affidavit filed by the police in support of the applications for the search warrants is set out below:

"That since November 1990, the City of Leavenworth has experienced a series of sexual assaults, and rapes. Over the course of the investigations, similarit[ies] have surfaced which would indicate the crimes could very well be the work of one individual. With the assistance of the Federal Bureau of Investigation and Kansas

Bureau of Investigation Laboratories, DNA was isolated in five of the victims as coming from the same suspect. *Information was also received from the Kansas City Area TIPS hot line which advised that a possible suspect in the rapes would be a Herbert Ruff who now resides in the City of Leavenworth.* Upon following up on this lead, Mr. Ruff was interviewed and gave a blood sample. That blood sample was found to be type B, which is similar to the type isolated in the five DNA matches. Testing of the DNA and Mr. Ruff's blood sample is continuing at the Kansas Bureau of Investigation laboratory.

"On a rape which occurred on May 28, 1993 at [an address], the Leavenworth Police Department received a report of a suspicious vehicle in the area of Olde Creek Court. Upon checking this vehicle it was found to belong to Herbert Ruff. The vehicle was a Brown over Black Oldsmobile Delta 88 with Kansas Tags, FFK694. The time [of] the check of Mr. Ruff's vehicle would have coincided with the rape and the vehicle would have been within two block[s] of the location of [the] occurrence. *Mr. Ruff also has a criminal history for prior rape and sodomy offenses.* The vehicle at the time of this check was found empty.

"Upon doing background on the victims of the attacks, it was found that Mr. Ruff resided at [an address], which was next door to victim [TC] who was assaulted on September 28, 1991. The victim of the rape which was reported on June 19, 1993 stated that she was employed at Food 4 Less and her boyfriend is employed at Price Chopper, which is where Mr. Ruff's wife is employed.

"During the initial investigations, [a] Kansas State Prison bloodhound as well as the police department K-9 were utilized in an attempt to locate a possible suspect. In every case the dogs would pick up a track of the suspect which would then end abruptly within a couple of blocks of the location of [the] occurrence. This indicates to the handlers that the suspect most likely entered a vehicle [somewhere] within the general location." (Emphasis added.)

Prior to trial, Ruff moved the court to suppress the evidence seized in the warrant search of his home and car. He argued to the trial court and he contends on appeal that the affiant's statement that Ruff had a prior criminal history of rape and sodomy was patently false and deliberately misleading, and the reliability and credibility of the informant was not sufficiently established in the affidavit.

In *State v. Jacques*, 225 Kan. 38, 587 P.2d 861 (1978), this court, relying on *Franks v. Delaware*, 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978), stated the general rules regarding challenges to the sufficiency of an affidavit supporting an application for a search warrant:

"[T]here is a presumption of validity with respect to an affidavit supporting a search warrant and generally a party against whom a search warrant is directed

may not dispute the matters alleged in the supporting affidavit or application. [Citation omitted.]

"An exception to the above general rule is recognized if the challenger's attack is supported by allegations and an offer of proof under oath that the affidavit or application for search warrant contains material statements of deliberate falsehood or of reckless disregard for the truth. Under this exception an evidentiary hearing would be required on a motion to suppress evidence obtained in the search. The challenger has a duty to point out specifically the portion of the warrant affidavit that is claimed to be false, and a statement of supporting reasons should accompany the motion to suppress." *Jacques*, 225 Kan. at 43-44.

Under this rule, if the defendant can show that without the false information the affidavit is insufficient to support a finding of probable cause, the defendant is entitled, under the Fourth and Fourteenth Amendments, to a full evidentiary hearing on the motion. *State v. Breazeale*, 238 Kan. 714, 725, 714 P.2d 1356, *cert. denied* 479 U.S. 846 (1986).

### Probable Cause

The duty of the reviewing court is to ensure that the magistrate that issued the search warrant had a substantial basis for concluding probable cause existed. In making its determination, the reviewing court is required to pay great deference to the issuing magistrate's finding of probable cause for the issuance of the warrant, and such after-the-fact scrutinizing should not take the form of de novo review. *State v. Henry*, 263 Kan. 118, 126, 947 P.2d 1020 (1997).

In determining whether probable cause exists to support a search warrant, the magistrate must view the affidavit under the totality of the circumstances. This requires the issuing magistrate to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *State v. Toler*, 246 Kan. 269, 272, 787 P.2d 711 (1990) (citing *Illinois v. Gates*, 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317, *reh. denied* 463 U.S. 1237 [1983]). Ruff contends that the affidavit failed to provide facts supporting the credibility and reliability of the information obtained from a confidential informant. He argues that without such information, the affidavit is insufficient to support the magistrate's finding of probable cause.

We have adopted the totality of the circumstances analysis set forth in *Gates* for judging the credibility and reliability of information obtained from a confidential informant. See *Toler*, 246 Kan. 269.

### Motion to Suppress

Without ruling on the motion to suppress, the trial judge denied an evidentiary hearing on the motion, stating that he had in the previous case (93 CR 267) ruled that the affidavit supplied probable cause to issue a valid warrant. Therefore, he was declining to reconsider the motion to suppress.

On appeal, Ruff contends that the district judge was incorrect in stating that in a previous case he had ruled on the sufficiency of the affidavit. In support, Ruff notes that the subject of the suppression hearings in the prior case was the blood samples taken from Ruff for DNA testing. Ruff points out that the record and transcripts of 93 CR 267 fail to show that an evidentiary hearing was held to determine the sufficiency of the affidavit for the search warrant.

The case alluded to by the trial court, 93 CR 267, was reviewed in the unpublished opinion, *State v. Ruff*, 75,742, filed May 30, 1997. In that case this court noted: "In the district court, Ruff filed a motion to suppress blood test results and evidence seized from the searches of his house and car. . . . The record does not contain express dispositions of these motions." From this note in the opinion, we conclude that the trial court failed, for a reason unknown, to rule on the sufficiency of the affidavit supporting the search warrant in either case.

Even though the trial judge failed to rule on the sufficiency of the supporting affidavit, this court is not without a basis to review the issuing court's finding of probable cause. Where the controlling facts are based upon written or documentary evidence, the appellate court has as good an opportunity to examine and consider the evidence as did the court below and determine de novo what the facts establish. *Kneller v. Federal Land Bank of Wichita*, 247 Kan. 399, 400, 799 P.2d 485 (1990). Whether the affidavit supports a finding that there appeared to be probable cause that a crime had

been committed and that evidence of the crime would be found at Ruff's residence and in his car is a legal question that the trial court or this court can decide on the basis of the affidavit. Therefore, this court is as capable as the trial court to make the sufficiency determination.

## Criminal History

At the suppression hearing, Ruff argued the affidavit supporting the search warrant contained false information that he had a criminal history of rape and sodomy offenses. Ruff admitted to the district judge that he had been previously arrested for rape and sodomy but had not been convicted of those offenses. The State explained that the statement regarding Ruff's prior criminal history in the affidavit was based on a Kansas Bureau of Investigation (KBI) printout which indicated Ruff had been arrested and charged with sex offenses in Wyandotte County. The State informed the court that the prior charges had been dismissed because the victims in those cases chose to forego prosecution. The parties make the same arguments here on appeal.

Whether prior arrests constitute criminal history for purposes of probable cause to issue a search warrant is an issue of first impression in Kansas. The prior arrest information referred to in the affidavit was provided by the KBI.

Upon arrest for certain offenses, including sex offenses, it is the duty of the arresting law enforcement agency to collect identifying data, including fingerprints and a physical description, on the person arrested and forward that data to the KBI. K.S.A. 21-2501(a) and (c). The data sent to the KBI and collected in a central repository is maintained as "[c]riminal history record information." K.S.A. 22-4701(b). The KBI is authorized to provide nonconviction criminal history record information to other criminal justice agencies for investigation purposes. K.S.A. 22-4706(b); K.S.A. 22-4707; K.A.R. 10-12-2. Therefore, the information in the affidavit regarding Ruff's prior arrests was a record of Ruff's criminal history.

The next question is whether the nonconviction data in the criminal history record information can be used by the law enforcement history to support a finding of probable cause. The United States

Supreme Court held in *Brinegar v. United States*, 338 U.S. 160, 93 L. Ed. 1879, 69 S. Ct. 1302, *reh. denied* 338 U.S. 839 (1949), that facts sufficient to establish probable cause must not necessarily rise to the level of facts admissible in a court of law. The *Brinegar* court explained:

"For a variety of reasons relating not only to probative value and trustworthiness, but also to possible prejudicial effect upon a trial jury and the absence of opportunity for cross-examination, the generally accepted rules of evidence throw many exclusionary protections about one who is charged with and standing trial for a crime. Much evidence of real and substantial probative value goes out on considerations irrelevant to its probative weight but relevant to possible misunderstanding or misuse by the jury.

. . . .

"However, if those standards were to be made applicable in determining probable cause for an arrest or for search and seizure . . . few indeed would be the situations in which an officer, charged with protecting the public interest by enforcing the law, could take effective action toward that end. . . .

"In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved." 338 U.S. at 173-75.

As in this case, the information at issue in *Brinegar* concerned the defendant's criminal arrest record. The defendant in *Brinegar* argued that because the information regarding his prior arrests was not competent trial evidence, it was likewise incompetent to establish probable cause. The Supreme Court disagreed, finding the evidence of prior arrests was excluded at trial, not because "it was without probative value," but to avoid "possible misunderstanding or misuse by the jury." 338 U.S. at 173. As probative of probable cause, it was properly taken into account by the issuing court.

Where sufficiently connected with the case under investigation, information regarding a suspect's prior arrests can be probative of probable cause. Not all prior arrests or convictions meet the test of probative value, and when they do not, they will not support probable cause. In this case, where the prior arrests were for crimes very similar to the crime under investigation, they were probative of probable cause and properly considered by the issuing court.

### Reliability and Credibility of Informant

It is not necessary in this case to judge the veracity and credibility of the confidential informant. There was no confidential informant. The TIPS hotline caller was included in the affidavit merely to explain how Ruff became a suspect in the police investigation, not to assert Ruff committed the crimes. Therefore, the veracity or credibility of an informant was not an issue.

### Sufficiency of the Affidavit

The affidavit asserted that DNA and other evidence strongly suggested that a series of rapes which had occurred in Leavenworth were committed by one individual. Police used K-9 dogs to determine a pattern existed which indicated the rapist had driven to a location within a couple blocks of the victim's home, parked his car, and then walked to the victim's home. A citizen informer advised that Ruff should be investigated. Ruff was interviewed, and he provided a blood sample which did not eliminate him as a suspect. Ruff's car had been spotted in the vicinity at the time of one of the rapes; Ruff resided next door to one of the rape victims; and the boyfriend of another rape victim worked with Ruff's wife at a local grocery store. The applications for the search warrants were filed within 24 hours of the last rape.

Under the totality of the circumstances, these facts, regardless of Ruff's criminal history and the information received through the TIPS hotline, support probable cause to believe that Ruff was involved in the crimes and that evidence of the crimes might be found on his property.

Affirmed.