No. 87,667

STATE OF KANSAS, *Appellee*, v. RONALD G. WEAVER, *Appellant*.

(78 P.3d 397)

Opinion filed October 31, 2003.

*Cory D. Riddle*, assistant appellate defender, argued the cause, and *Kristen L. Chowning*, assistant appellate defender, and *Randall Hodgkinson*, deputy appellate defender, were on the brief for appellant.

*Jerome A. Gorman*, assistant district attorney, argued the cause, and *Tristram W. Hunt*, assistant district attorney, *Nick A. Tomasic*, district attorney, and *Carla Stovall*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: Ronald G. Weaver was convicted by a jury of one count of possession of cocaine with intent to sell. The Court of Appeals affirmed in an unpublished decision. This court granted Weaver's petition for review on the single question of his constitutional right to speedy trial. Thus, the only issue before us is whether the Court of Appeals erroneously concluded that the nearly 15-month delay between Weaver's arrest and trial did not violate Weaver's constitutional right to speedy trial.

When Weaver was searched incident to his arrest on an active warrant for a weapons violation, police found crack cocaine packaged in several units and $265 cash, including 12 twenty-dollar bills. A police officer testified that the amount and packaging of the crack cocaine was consistent with distribution rather than personal use. He further testified that crack cocaine can be sold in $20 pieces. With regard to the bulletproof vest found in the vehicle Weaver was driving, the officer testified that because of the level of danger in the drug trade, his agency is "finding more and more as time goes on that when we arrest people that are selling narcotics or distributing narcotics that they do possess bullet-proof vests."

With regard to Weaver's claim that his right to a speedy trial was violated, the Court of Appeals stated:

"Weaver first claims his constitutional right to a speedy trial was violated. He was arrested on July 2, 1999, and his trial commenced September 26, 2000, some 14 months later. The following events document the proceedings leading to Weaver's trial. On July 12, 1999, Weaver was charged with one count of possession of cocaine with intent to sell. On November 2, 1999, Weaver was arraigned and waived preliminary hearing. The trial was set for April 26, 2000. Weaver was in custody during this time on other charges.

"On April 26, 2000, over Weaver's objection, the court continued the case for 30 days. On May 8, 2000, the court scheduled the trial to commence on May 30, 2000. On May 25, 2000, defense counsel asked the court for a continuance because she had another trial scheduled for that day, and, while she believed that that case would be dismissed, she was not prepared for Weaver's trial. Weaver objected to the continuance and asked for another attorney to be appointed to represent him. The State also objected to the continuance. However, the court granted the continuance, ordered the speedy trial time assessed against the defendant, and ordered the case to be immediately set for trial. On July 27, 2000, the trial was set for September 25, 2000. Weaver filed a motion to dismiss alleging the violation of his constitutional and statutory rights to a speedy trial. The court overruled the motion, finding that Weaver's rights were only protected by his constitutional right to a speedy trial and that right had not been violated. On September 25, 2000, the case went to trial." Slip op. at 3-4.

The Court of Appeals discussed Weaver's constitutional speedy trial claim as follows:

"Whether a defendant's constitutional right to a speedy trial has been violated is a question of law over which this court has unlimited review. *State v. Sanders*, 272 Kan. 445, 458, 33 P.3d 596 (2002). Our Supreme Court has adopted a four-part test to determine whether an accused has been denied his or her constitu-

tional right to a speedy trial. *State v. Ruff*, 266 Kan. 27, 31, 967 P.2d 742 (1998). This test, adopted from *Barker v. Wingo*, 407 U.S. 514, 530, 33 L. Ed. 2d 101, 92 S. Ct. 2182 (1972), contains the following factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant. *Ruff*, 266 Kan. at 31. None of these factors are controlling; instead, they are considered and weighed with respect to each other. *Barker*, 407 U.S. at 533-34.

"Mere passage of time is not determinative of a violation. *Ruff*, 266 Kan. at 32. Rather, the length of time is a type of triggering mechanism. 266 Kan. at 32. Unless we find the delay in this case to be presumptively prejudicial, there is no need to inquire further into the other factors in the *Barker* analysis. 266 Kan. at 32; see *State v. Smith*, 271 Kan. 666, 682, 24 P.3d 727 (2001). The question of whether the time delay was presumptively prejudicial depends on the circumstances of the case. *State v. Mathenia*, 262 Kan. 890, 894, 942 P.2d 624 (1997). Our Supreme Court has held, however, that a delay of a little over a year is not presumptively prejudicial as set out in *Barker. State v. Goss*, 245 Kan. 189, 193, 777 P.2d 781 (1989). We find that, clearly, a 14-month delay qualifies as 'a little over a year,' thereby negating further analysis of other *Barker* factors.

"Weaver further argues that the delay was prejudicial because the bulletproof vest, which was used as evidence against him, was destroyed during the delay, thereby denying him the ability to examine or fingerprint the vest. The problem with this argument is that Weaver never asked to examine the vest at any time during the six months prior to the vest being destroyed. Had Weaver felt there was anything significant in the way of evidentiary matters helpful to his cause, he had ample time to request testing but did not do so. No prejudice has been shown." Slip op. at 5-6.

The Court of Appeals correctly conducted an unlimited review of the legal question of whether Weaver's constitutional right to a speedy trial has been violated. See *State v. Sanders*, 272 Kan. 445, 458, 33 P.3d 596, *cert. denied* 536 U.S. 963 (2001). As stated by the Court of Appeals, Kansas courts follow the four-factor analysis set forth in *Barker v. Wingo*, 407 U.S. 514, 33 L. Ed. 2d 101, 92 S. Ct. 2182 (1972), for claims of a violation of the right to speedy trial under the Sixth Amendment to the United States Constitution. 272 Kan. at 458-59. As to the length of delay factor, the Supreme Court stated:

"The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case. To

take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." 407 U.S. at 530-31.

Another example is set out in footnote 31:

"For example, the First Circuit thought a delay of nine months overly long, absent a good reason, in a case that depended on eyewitness testimony. *United States v. Butler*, 426 F.2d 1275, 1277 (1970)." 407 U.S. at 531 n. 31.

In *Sanders*, citing *State v. Smith*, 271 Kan. 666, 683, 24 P.3d 727 (2001), *State v. Hill*, 257 Kan. 774, 778-79, 895 P.2d 1238 (1995), and *State v. Goss*, 245 Kan. 189, 193, 777 P.2d 781 (1989), the court stated that in Kansas delays of a little more than a year are held not presumptively prejudicial to the defendant's right to a speedy trial. 272 Kan. at 459. In neither *Smith* nor *Hill* was there a delay exceeding a year, and those cases are not authority for the principle that delays of a little more than a year are not presumptively prejudicial. In *Smith*, the delay amounted to less than 4 months, 271 Kan. at 683, and, in *Hill*, the delay was less than 11 months, 257 Kan. at 779.

In *Goss*, the defendant was arrested on September 22, 1986, in Oklahoma. Because the State had considerable difficulty in deciding what degree of homicide to charge, arraignment on the information on which Goss was tried did not occur until February 27, 1987. On March 6, 1987, while he was in jail for the September murder, Goss was served with a criminal warrant involving unrelated burglary and theft charges. On March 26, 1987, he sought a continuance on the basis of an insanity defense and consumed the period until September 10, 1987, with matters pertaining to the defense, which he then abandoned. His trial began on October 14, 1987, 1 year and 21 days after his arrest. In these circumstances, the court concluded that the length of the delay was not clearly presumptively prejudicial. 245 Kan. at 191-93.

Weaver cites *State v. Mathenia*, 262 Kan. 890, 894, 942 P.2d 624 (1997), in which there was a 23-month delay between arrest and trial. Mindful of *Barker*'s teaching that whether delay is presumptively prejudicial necessarily depends on the circumstances of the case, the court undertook a thorough examination of them:

"What are the peculiar circumstances here? The crimes for which Mathenia was convicted arose from a group attack by inmates upon two correctional officers in a prison yard recreational shack crowded with other inmates on a rainy afternoon. The evidence had to come from the inmates themselves. Inmate interviews commenced on the evening of the attacks and continued as late as a week before the grand jury proceedings. Physical evidence from the scene was still being processed by the KBI at the time of the grand jury proceedings. During Mathenia's trial, KBI Agent Dennis testified that his department had taken over 600 statements concerning the investigation. At least 30 to 40 of those statements identified participants in the attack. Approximately 30 inmates were considered as viable suspects in the attacks. The investigation resulted in the indictment of 12 inmates in the district court of Leavenworth County. Seven cases went to jury trials (two acquittals and five convictions, including Mathenia's), defendants pleaded in three cases, one case was dismissed without prejudice, and the disposition of one case was not shown in this record. Mathenia's case was one of the last to be tried. To say that this case involved a complex, serious crime would be an understatement." 262 Kan. at 895.

The court concluded, "[b]ased on the circumstances here," the 23 months between Mathenia's arrest and trial was not presumptively prejudicial. 262 Kan. at 895. The court further remarked that "[a] substantial portion of the delay was attributable to Mathenia, who remained passive as to his speedy trial rights throughout much of the delay." 262 Kan. at 897.

The State cites *State v. Bloom*, 273 Kan. 291, 44 P.3d 305 (2002), in which the delay between arraignment and trial was slightly more than 18 months. The court concluded that the delay was not presumptively prejudicial because Bloom acquiesced in all but approximately 2 months of it. 273 Kan. at 311. Similar circumstances in *State v. Smallwood*, 264 Kan. 69, 955 P.2d 1209 (1998), also cited by the State, led the court to conclude that the delay was not presumptively prejudicial. The length of delay between Smallwood's arraignment and trial was 26 months, only 11 months of which was not due to defendant's requested continuances. In addition, the court noted that Smallwood contributed to the delay by filing numerous pretrial motions. 264 Kan. at 76.

The State also cited *State v. Fitch*, 249 Kan. 562, 819 P.2d 1225 (1991), in which the court determined that the delay was presumptively prejudicial but, after examining the other *Barker* factors, concluded that the trial court did not err in dismissing the

case on the ground that Fitch was denied his constitutional right to a speedy trial. The length of time that elapsed between filing of the complaint and its dismissal was 402 days. 249 Kan. at 563. The peculiar circumstances in *Fitch* were that defendant never received a preliminary hearing and there was no preliminary hearing pending when the complaint was dismissed, 249 Kan. at 563, why the case was continued for over a year was not apparent from the record, 249 Kan. at 564, "the defendant appeared three times for his preliminary hearing only to have it postponed," 249 Kan. at 568, and, although he was not incarcerated, defendant's employment was suspended. 249 Kan. at 567.

The factual circumstances in the present case are not similar to those in *Fitch*, but the court's statement in *Fitch* of the applicable principle of law provides direction for analysis in the present case. The court stated: "It should be noted numerous cases have held that longer periods of time than 402 days do not violate the speedy trial right. These cases, however, should not be taken to provide a set period of time. *Barker* mandates an ad hoc approach in which the delay in each case is analyzed according to its particular circumstances." 249 Kan. at 564. The Court of Appeals, in its decision in the present case, mistakenly treated *Goss* as establishing a set period of time that would never constitute a presumptively prejudicial delay. Slip op. at 5 ("Our Supreme Court has held, however, that a delay of a little over a year is not presumptively prejudicial as set out in *Barker. State v. Goss*, 245 Kan. 189, 193, 777 P.2d 781 [1989]. We find that, clearly, a 14-month delay qualifies as 'a little over a year,' thereby negating further analysis of other *Barker* factors."). What the court said in *Goss* was that the length of the delay was "not clearly presumptively prejudicial *as enunciated by Barker v. Wingo*." (Emphasis added.) 245 Kan. at 193.

In addition to *Goss*, the Court of Appeals relied on *State v. Ruff*, 266 Kan. 27, 967 P.2d 742 (1998). In *Ruff*, this court correctly set out the *Barker* test. See *State v. Mathenia*, 262 Kan. at 894; *State v. Green*, 260 Kan. 471, 473-74, 920 P.2d 414 (1996). After making it clear that the circumstances of each case must be considered in determining if the delay is presumptively prejudicial, and that the mere passage of time is not determinative, we said:

"The time lapse between Ruff's arrest and the trial was approximately 3 years. A delay of 3 years is significant, warranting a consideration of the other *Barker* factors." 266 Kan. at 32.

Up to that point, we had not considered any of the circumstances in the case which would warrant a finding that the time delay was presumptively prejudicial. The import of that statement is that a delay of 3 years is in and of itself presumptively prejudicial. We emphasized again that the length of time is not determinative of the issue. The statement in *Ruff* that it is, is incorrect and did not warrant this court's consideration of the other *Barker* factors. However, in considering the other factors we did consider the circumstances of the case, and made the correct decision.

As we have seen, *Barker* rejected the inflexible approach of a fixed-time period in favor of balancing the four factors—length of the delay, reason for the delay, defendant's assertion of his or her right, and prejudice to the defendant—in each case. 407 U.S. at 529-30.

In balancing these factors the Court said:

"We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution." 407 U.S. at 533.

First, the court must assess the length of the delay to determine if, based on the circumstances of the case, the delay was presumptively prejudicial. Absent such a finding, the consideration of the three remaining factors is not warranted. Hence, circumstances in addition to the length of the delay in this case need to be placed on the scale. The peculiar circumstances here are:

Weaver's crime was one count of possession of cocaine with intent to sell. The State's case against him was simple and straightforward—police found on Weaver crack cocaine packaged in individual units and $265 cash, including 12 $20 bills. The State's evidence against him was presented in 64 transcript pages of tes-

timony. The tolerable delay for an ordinary crime is less than for a complex one. 407 U.S. at 531. Further, Weaver was not arraigned until 123 days after his arrest, and another 176 days passed before Weaver's counsel asked for and was granted a continuance of the trial date. Two hundred and ninety-nine days passed in which no attempt was made to try the defendant. We find, under these circumstances, that the delay is presumptively prejudicial and consideration of the three remaining factors is warranted. Those factors are:

—Reasons for the delay. It is not clear from the record on appeal why four months separated Weaver's arrest and arraignment (July 2, 1999, to November 2, 1999). The record does show that Weaver's bond was forfeited on Aug 17 due to his breach of a condition of the appearance bond. At arraignment, trial was set for April 26, 2000. The court continued the case for 30 days. At a hearing on May 25, 2000, defense counsel, who had another case set for trial on May 30 when Weaver's trial was set and said she was unprepared for Weaver's trial due to lack of notice of the setting, asked for a continuance over the defendant's objection. The court granted a continuance, to be assessed to the defendant, over the objections of the State and Weaver, who asked that another attorney be appointed to represent him. On August 24, 2000, defense counsel filed a motion to dismiss on speedy trial grounds. The motion was overruled. Trial began on September 25, 2000.

—Defendant's assertion of rights. At the hearing on May 25, 2000, Weaver refused to waive speedy trial, objected to any further delay, and asked that different counsel be appointed for him.

—Prejudice to the defendant. The Supreme Court in *Barker* stated that prejudice is to be assessed relative to the interest of defendants who are protected by the right to a speedy trial. The Court identified three such interests:

"(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss

of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown." 407 U.S. at 532.

Weaver was incarcerated on other charges. He was arraigned in the present case, 99CR1407, and in another case, 99CR1318, at the same time. On September 22, 2000, defense counsel filed a motion to sever the cases for trial, and only the present case was tried starting September 25, 2000. There is no showing that Weaver's witnesses died, lost their memory, or did not appear at trial. There is no showing that Weaver's defense was impaired in any way.

*Barker* requires all these factors to be weighed in determining whether the delay violated Weaver's right to speedy trial. The length of time between Weaver's arrest and trial was 450 days, but it may be inferred from the record that he was not incarcerated the entire time. His crime was not a complex one. It was not until 10 months had elapsed since his arrest that Weaver objected to having his trial delayed further. Additional delay was due to his counsel's request for continuance. Although Weaver objected to the continuance, the trial court correctly assessed that time against Weaver. At least from arraignment in November 1999, Weaver was incarcerated on other charges as well as on the charges in the present case. Most important, there is no showing that the prejudice to Weaver was more than minimal. Further, there is no evidence that the State caused or manipulated the delay.

We conclude that Weaver's constitutional right to speedy trial was not violated. Thus, the trial court did not err in overruling Weaver's motion to dismiss.

The judgment of the Court of Appeals affirming the district court is affirmed. The judgment of the district court is affirmed.

BEIER, J., not participating.

WAHL, S.J., assigned▌