NOT DESIGNATED FOR PUBLICATION

No. 126,546

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RICKY DION DUNKLIN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Riley District Court; KENDRA S. LEWISON, judge. Submitted without oral argument. Opinion filed December 6, 2024. Affirmed.

*Ryan Eddinger*, of Kansas Appellate Defender Office, for appellant.

*David Lowden*, deputy county attorney, *Barry R. Wilkerson*, county attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before SCHROEDER, P.J., MALONE and BRUNS, JJ.

PER CURIAM: Ricky Dion Dunklin appeals after a jury convicted him of one felony count of aggravated battery and one misdemeanor count of domestic battery. The jury also acquitted him on four additional charges. Subsequently, the district court placed him on probation for 12 months. On appeal, Dunklin contends that he was denied his constitutional right to a speedy trial. Based on our review of the record on appeal and relevant case law, we conclude that Dunklin's constitutional right to a speedy trial was not violated under the circumstances presented. Thus, we affirm.

1

On August 21, 2019, the State charged Dunklin in Riley County case No. 19 CR 432 with aggravated battery and one count of aggravated domestic battery. Although Dunklin appeared before the district court on September 24, 2019, and October 19, 2019, he requested a continuance at each hearing. Another hearing was set for November 19, 2019, but Dunklin appeared late. As a result, the district court continued the hearing to December 3, 2019. On that date, Dunklin requested a preliminary hearing.

The preliminary hearing was set for January 17, 2019, but inclement weather closed the courthouse. So, the preliminary hearing was continued, and Dunklin was bound over for trial on February 24, 2020. At a subsequent hearing, the district court offered Dunklin a first trial setting to commence on June 15, 2020. However, his attorney had a scheduling conflict, and Dunklin conditionally waived his right to a speedy trial. Accordingly, the jury trial was set to begin on July 14, 2020.

On July 2, 2020, Dunklin was not able to appear at a pretrial hearing because he failed to pass the COVID-19 health screening measures that were in place at that time. Unfortunately, the trial date needed to be rescheduled because the district court was not yet holding jury trials due to the pandemic. Even though the district court set another pretrial hearing on July 27, 2020, Dunklin failed to appear. On August 14, 2020, Dunklin again failed to appear at the pretrial hearing, and the district court issued a bench warrant for his arrest.

Dunklin did appear at a status hearing on February 1, 2021. Yet the district court was still not holding jury trials at that time, and the jury trial was reset to commence on May 27, 2021. A pretrial hearing was finally held on April 12, 2021, via livestreaming. Prior to trial, the State filed a motion seeking to elevate the aggravated battery charge

from a level 7 felony to a level 4 felony. On May 19, 2021, when the motion was set to be heard, Dunklin once again failed to appear.

On July 19, 2021, the district court set a motions hearing for October 5, 2021, and continued the trial until December 2, 2021. After that hearing, the district denied the State's motion to amend the complaint. On November 24, 2020, Dunklin filed a motion in limine seeking to prevent the State from introducing prior bad acts evidence under K.S.A. 60-455. The district court granted the motion and entered an order in limine to exclude any reference to any prior bad acts allegedly committed by Dunklin.

The jury trial began on December 2, 2021. Unfortunately, the victim volunteered testimony regarding alleged prior bad acts committed by Dunklin in violation of the order in limine, and the district court granted defense counsel's motion for a mistrial. Dunklin also moved for dismissal of the charges, and the State moved to admit the evidence of his alleged prior acts under K.S.A. 60-455. On February 11, 2022, the district court held a hearing and denied both motions. Three days later, the State filed a motion seeking to voluntarily dismiss the charges without prejudice, and the district court granted the motion.

On March 2, 2022, the victim visited the Riley County Police Department and reported the previous instances of domestic violence that she alleged occurred in 2018 and 2019. Then, on March 29, 2022, the State filed a new complaint against Dunklin in Riley County case No. 22 CR 120. The complaint included the charges set forth in the previous case—with the aggravated battery charged as a level 4 felony rather than a level 7 felony—and added four additional charges relating to events that allegedly occurred in October 2018 and March of 2019.

Following Dunklin's arrest on a warrant issued with the new complaint, he made his first appearance on April 22, 2022. The parties appeared for a status conference on

3

May 17, 2022. The next day, Dunklin filed a motion to sever the refiled charges from the new charges and a motion to dismiss the allegations contained in 19 CR 432 with prejudice.

On June 28, 2022, the parties filed an agreed order continuing a status conference scheduled for July 19, 2022, until August 23, 2022. The district court then held a hearing on the pending motions on August 18, 2022. After hearing the arguments of counsel, the district court denied both the motion to sever and the motion to dismiss. At the status conference held on August 23, 2022, the district court granted Dunklin's request to set a preliminary hearing for October 28, 2022. At the preliminary hearing, the district court bound Dunklin over for trial on all of the felony charges and scheduled an arraignment for November 21, 2022.

Yet again, Dunklin failed to appear on the date of his arraignment, and the district court continued it until November 28, 2022. On that date, Dunklin appeared for his arraignment, and the district court set a deadline for the filing of motions. On January 6, 2023, Dunklin filed another motion to dismiss in which he asserted—for the first time— that his constitutional right to a speedy trial had been violated. Although Dunklin also filed several other motions at the same time, they are not material to this appeal.

The district court set a motions hearing for February 23, 2023, but Dunklin once again failed to appear. Subsequently, the district court held a hearing on the pending motions filed by Dunklin on March 8, 2023, and March 10, 2023. At the conclusion of the hearing, the district court denied each of the motions. The district court explained its reasons for denying the motions on the record. Significantly, the district made specific findings regarding each of the factors for determining whether there has been a violation of the constitutional right to a speedy trial as set forth by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972).

4

After considering the four *Barker* factors, the district court concluded that Dunklin's constitutional right to a speedy trial had not been violated. In reaching this conclusion, the district court considered the fact that many of the delays could not be attributed to the State. In particular, the district court noted that the COVID-19 pandemic made scheduling the jury trial difficult, that Dunklin had requested or consented to several continuances, and that he had failed to appear at multiple hearings.

The district court commenced a two-day jury trial on April 4, 2023. After weighing the evidence, the jury found Dunklin guilty of the lesser-included offense of level 7 aggravated battery and the lesser-included offense of simple domestic battery. In addition, the jury acquitted Dunklin of the four charges that were included in the new complaint. After denying a motion for judgment of acquittal, the district court sentenced Dunklin to a controlling term of 12 months' imprisonment to be followed by 6 months in jail. But the district court suspended Dunklin's sentence and placed him on probation for a term of 12 months.

Thereafter, Dunklin filed a timely notice of appeal.

ANALYSIS

The sole issue presented on appeal is whether Dunklin's constitutional right to a speedy trial was violated. Dunklin contends that the district court erred when it weighed the factors set forth in *Barker* and concluded that his constitutional right to a speedy trial had not been violated. He argues that the State acted in bad faith by dismissing case No. 19 CR 432 and including the original charges—plus additional charges—in the new complaint filed in case No. 22 CR 120. In response, the State claims that we should dismiss this appeal on the basis that Dunklin has failed to designate a sufficient record for review. The State also argues that the district court correctly applied the *Barker* factors in finding that Dunklin's constitutional right to a speedy trial was not violated.

We pause to note that Dunklin has failed to include the underlying record in case No. 19 CR 432 as a part of the record on appeal. As the State correctly points out, it is the party alleging an error occurred—in this case Dunklin—who has the burden of designating a sufficient record to establish that the district court erred. See *State v. Liles*, 313 Kan. 772, 783, 490 P.3d 1206 (2021); Supreme Court Rule 6.02(a)(4), (a)(5) (2024 Kan. S. Ct. R. at 36) (appellant has the burden to furnish a sufficient record to support the claims of error; appellant's claims of error must be supported with specific citations to the record on appeal). Nevertheless, we will not dismiss this appeal but will instead rule on the issue presented based on the record on appeal that has been presented.

The Sixth Amendment to the United States Constitution protects a defendant's "right to a speedy and public trial." U.S. Const. amend. VI; see *State v. Queen*, 313 Kan. 12, 15-16, 482 P.3d 1117 (2021); *State v. Owens*, 310 Kan. 865, 872, 451 P.3d 467 (2019). This constitutional right to a speedy trial is also protected by section 10 of the Kansas Constitution Bill of Rights. *State v. Shockley*, 314 Kan. 46, 61, 494 P.3d 832 (2021). Unlike the statutory right to a speedy trial—which was suspended during the COVID-19 pandemic—the constitutional speedy trial provision is not defined by a strict timeframe. Instead, the determination of whether the constitutional right has been violated depends on the facts and circumstances of each case. *Barker*, 407 U.S. at 521-22; see *State v. Ford*, 316 Kan. 558, 561, 519 P.3d 456 (2022).

Here, it is undisputed that the district court applied the *Barker* factors in reaching its decision that Dunklin's constitutional right to a speedy trial had not been violated. At the same time, we exercise unlimited review over whether the State has violated the defendant's constitutional right to speedy trial. *Ford*, 316 Kan. at 560; *Shockley*, 314 Kan. at 61. In order to make this determination, we will also look to the factors set forth by the United States Supreme Court in *Barker*, 407 U.S. at 530.

6

Under *Barker*, we are to consider: (1) the length of the delay; (2) the reason or reasons for the delay; (3) the defendant's assertion of the right to a speedy trial; and (4) prejudice to the defendant. *Owens*, 310 Kan. at 869. None of these four factors, standing alone, is sufficient for finding a violation of the constitutional right to a speedy trial. Instead, we must consider them together along with any other relevant circumstances that may exist. *State v. Rivera*, 277 Kan. 109, 113, 83 P.3d 169 (2004).

Here, the record on appeal that has been provided to us for review reflects that the State initially began its prosecution of Dunklin on August 21, 2019, when it filed the complaint in case No. 19 CR 432. Yet Dunklin did not assert his constitutional right to a speedy trial until January 6, 2023. Of course, in the interim, much had occurred that affected the ability of the district court to bring Dunklin to trial including a global pandemic, his failure to appear at multiple hearings, his request or consent to a number of continuances, the mistrial granted at the first trial, the dismissal of the first complaint without prejudice, and the filing of a new complaint setting forth both the original charges as well as several additional charges.

*Length of the Delay*

The second jury trial in this case occurred 43 months after the State filed the initial complaint against Dunklin in case No. 19 CR 432 and 12 months after the filing of the new complaint in case No. 22 CR 120. It is important to recognize that due to the COVID-19 pandemic, the Riley County District Court—like other courts across Kansas—was not holding jury trials to protect public safety. See Kansas Supreme Court Administrative Order 2020-PR-016, effective March 18, 2020 (continuing all jury trials that had not yet begun). Kansas Supreme Court Administrative Order 2020-PR-099, effective September 4, 2020, made it possible to resume jury trials in counties not subject to stay-at-home orders and in cases where there was a constitutional speedy trial issue.

7

In addition, the statutory right to a jury trial set forth in K.S.A. 22-3402 was suspended by the Kansas Legislature from March 19, 2020, to March 19, 2024. K.S.A. 22-3402(m).

Even so, the constitutional right to a speedy trial was not suspended. The speedy trial clock starts anew when the State dismisses a pending case because of necessity or when the charges in the second case are not identical to the charges in the first case. *State v. Gill*, 48 Kan. App. 2d 102, 113-14, 283 P.3d 236 (2012); *State v. Burgess*, No. 109,029, 2014 WL 1362785, at *3 (Kan. App. 2014) (unpublished opinion) ("[I]f the charges in the refiled case include a charge from the dismissed case, then those charges are considered identical."). Here, although it appears that the original case was dismissed in part because the victim alleged additional acts of domestic violence committed by Dunklin, the State does not assert that the dismissal was necessary.

The second consideration concerning the length of delay factor is the time between the voluntary dismissal of the first case and the filing of the second complaint. This time interval is generally not considered as part of the delay. *Gill*, 48 Kan. App. 2d at 110. Moreover, this time period was not long—the district court dismissed the original case on February 16, 2022, and the State filed the new complaint on March 29, 2022—so we do not find it to be prejudicial to Dunklin since he was not in jail during the interim. Nor do we find the filing of the new complaint to be an act of bad faith by the State because it was motivated—at least in part—by seeking justice for the victim in this case.

Kansas courts have not set strict rules for determining when a delay is long enough to be presumptively prejudicial. Such a finding depends on the circumstances of each case. See *Barker*, 407 U.S. at 530-31. A panel of this court has noted that the "'tolerable delay for an ordinary crime is less than for a complex one.'" *Gill*, 48 Kan. App. 2d at 108-09 (quoting *State v. Weaver*, 276 Kan. 504, 511, 78 P.3d 397 [2003]). Even though this case is not particularly complex, it was complicated by several factors including the

8

pandemic, scheduling issues, and the evidentiary issues relating to the victim's allegations of additional acts of domestic violence that were not included in the initial complaint. Still, we find this factor to weigh slightly in favor of Dunklin because the State's dismissal of the first case was not necessary, but it was also not done in bad faith.

*Reasons for the Delay*

The reasons for a delay in bringing a criminal case to trial is often the most significant factor under a *Barker* analysis. This is particularly true in this case and yet we are at a disadvantage in our review of the facts regarding this factor. Here, the majority of the delay came during the pendency of the first case, which was ultimately dismissed, and Dunklin has failed to provide us with the record in that case. As a result, we find that Dunklin is unable to establish many of his allegations regarding the reasons for the delay with citation to the underlying record in case No. 19 CR 432.

Based on the record on appeal that has been provided to us, it is evident that many of the delays were attributable to Dunklin. Several continuances granted by the district court were specifically requested or agreed to by the defense. Moreover, Dunklin even agreed to a conditional waiver of the right to a speedy trial in order to conform to defense counsel's trial schedule. Furthermore, Dunklin failed to appear for hearings on numerous occasions—both in the original case and in the second case—and his failure to do so resulted in many delays. In fact, on at least one occasion the district court issued a bench warrant for his arrest as a result of his failure to appear at a hearing. Certainly, it is difficult to bring a defendant to trial who repeatedly causes delays in the district court's ability to hold necessary hearings due to his failure to appear.

Additionally, the scheduling issues caused by the COVID-19 pandemic delayed the trial in this case. As the district court explained, there was a significant period of time when jury trials were not being held in Riley County and cases had to be placed on a

waiting list in order of priority. Although the State's dismissal of the original case and the filing of a new complaint caused some of the delay, we find that a major reason for the delay in bringing this case to trial was the COVID-19 pandemic.

Likewise, we find that Dunklin's requests for continuances, his conditional waiver of a right to a speedy trial, and his failure to appear at hearings on multiple occasions is also significant in causing the delay. Finally, Dunklin's failure to provide us with the record in the first case makes it difficult—if not impossible—for him to meet his burden to show that the delay was primarily caused by the State. Consequently, based on the record on appeal that has been provided to us, we conclude that this factor weighs in favor of the State.

*Assertion of Right*

Under the third factor in the *Barker* analysis, we consider when the defendant asserted the constitutional right to a speedy trial. See *State v. Fitch*, 249 Kan. 562, 565, 819 P.2d 1225 (1991) (failure to assert the right makes it harder to prove that a defendant was denied a speedy trial). Here, we find nothing in the record on appeal to suggest that Dunklin ever asserted a violation of his constitutional right to a speedy trial during the pendency of case No. 19 CR 432. Instead, a review of the record reveals that Dunklin did not assert his constitutional right to a speedy trial in case No. 22 CR 120 until January 6, 2023, which was only 3 months before trial.

In *Rivera*, 277 Kan. 109, the Kansas Supreme Court considered a defendant's claim that his constitutional right to a speedy trial had been violated. Similar to this case, the defendant in *Rivera* was responsible for some of the delay—including delays resulting from defense counsel's requests for continuances and the defendant's escape from custody. In concluding that there had not been a violation of the defendant's constitutional right to a speedy trial, our Supreme Court found that the defendant's

10

"minimal attempts to assert his [speedy trial] rights are counterbalanced by his two escapes from custody, the timing of his motion only 3 days before the preliminary hearing occurred, and his failure to set his motion with the court in a timely manner." 277 Kan. at 118; see *State v. Couch*, No. 123,196, 2021 WL 4032887, at *10 (Kan. App. 2021) (unpublished opinion).

Similarly, in this case, Dunklin conditionally waived his right to a speedy trial, requested several continuances, filed multiple substantive motions, failed to appear at hearings on numerous occasions, and was arrested on a bench warrant on at least one occasion based on his failure to appear at a hearing. Further, the record reflects that even after Dunklin asserted his constitutional right to a speedy trial on January 6, 2023, Dunklin failed to appear for the scheduled motions hearing the following month and that his failure caused the hearing to be continued to March 8, 2023. Accordingly, we conclude that this factor weighs in favor of the State.

*Prejudice to Dunklin*

Finally, we must consider the prejudice—if any—suffered by Dunklin as a result of the delay in bringing this case to trial. In *Barker*, the United States Supreme Court found that prejudice should be assessed in light of the interests that the constitutional right to a speedy trial was designed to protect. These interests are: (1) preventing oppressive pretrial incarceration, (2) minimizing anxiety and concern of the accused, and (3) limiting the possibility that the defense will be impaired. The Supreme Court also found that the last factor is the most significant because a defendant should be able to adequately prepare for trial. 407 U.S. at 532. We note that our Kansas Supreme Court has also recognized these factors in analyzing the prejudice to the defendant from the delay. *Rivera*, 277 Kan. at 118.

11

In his brief, Dunklin candidly concedes that it is his burden to establish actual prejudice. He also acknowledges that he was not held in custody while awaiting trial. So, the first interest identified by the United States Supreme Court is not at issue. Instead, Dunklin suggests that he was prejudiced because he was arrested twice and required to post more than one bond. He also suggests that he was unable find suitable housing for his family because of the felony charges were pending. He also states that he lost a job due to his arrest after the second complaint was filed and that he suffered stress and anxiety during the pendency of the criminal actions. In addition, he again asserts that the State's actions in dismissing the first case and filing the second case was motivated to thwart his defense.

We find that Dunklin has failed to present an adequate record on which we could conclude that he was prejudiced by the delay in bringing this case to trial. Again, we note that Dunklin's failure to include the record in case No. 19 CR 432 as part of the record on appeal makes it difficult—if not impossible—for us to determine what prejudice he may have suffered. Although he makes several assertions about such things as being unable to find housing and losing his job, he has not provided us with any evidentiary support for those allegations. Likewise, Dunklin has failed to explain how his defense in case No. 22 CR 120 was impaired. In fact, the record on appeal reflects that his counsel was able to obtain an acquittal on all of the additional charges, and he was convicted of lesser included offenses on the two original charges. Hence, we do not find that Dunklin has established prejudice to justify the setting aside of his convictions.

CONCLUSION

In summary, after balancing the four factors set forth in *Barker*—(1) length of delay between Dunklin's arrest and trial, (2) the reasons for the delay in bringing this case to trial, (3) the timing of his assertion that his constitutional right to speedy trial had been violated, and (4) his failure to show prejudice—we conclude that Dunklin's constitutional

12

right to a speedy trial was not violated. Although we recognize that there was a significant delay between the filing of the original charges and the second trial, we find that Dunklin caused or consented to numerous continuances of hearings throughout the proceedings, that he failed to assert his constitutional right to a speedy trial until about three months before trial and even then, he failed to appear for a subsequent hearing, and that the COVID-19 pandemic caused much of the delay. Under these circumstances, we conclude that the district court did not err in denying Dunklin's motion to dismiss, and we affirm his convictions.

Affirmed.