IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 117,216

STATE OF KANSAS,
*Appellee*,

v.

BRUCE T. SHOCKLEY,
*Appellant*.

SYLLABUS BY THE COURT

1.

Though a defendant need do nothing to preserve his statutory right to a speedy trial, a defendant's action and participation is required to waive that right.

2.

The law presumes that a defendant's waiver of his statutory right to a speedy trial is unconditional.

3.

A defendant may place conditions on his waiver of a statutory right to a speedy trial, but the defendant has the responsibility to clarify those conditions. Defendant also has the burden to provide notice to the State of such conditions on his waiver.

4.

A defendant who has waived his statutory right to a speedy trial may later revoke his waiver at any time, thereby reinstating that right. The defendant has the burden to provide notice to the State of such revocation of waiver.

1

5.

Where a defendant has waived his statutory right to a speedy trial in conjunction with a request for a continuance but does not clearly condition the length of the waiver, the presumption that the waiver is unconditional is not rebutted.

6.

In addition to statutory protections, both the Sixth Amendment to the United States Constitution and Section 10 of the Kansas Constitution Bill of Rights guarantee defendants the right to speedy trials.

7.

Analysis of the constitutional right to a speedy trial requires a balancing test which courts conduct on an ad hoc basis. The four *Barker* factors, adopted by this court, are utilized as part of that balancing test: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.

8.

A constitutional right to speedy trial is not violated if the length of the delay is not presumptively prejudicial.

9.

Pursuant to the current statutory framework, proof of a higher degree of culpability than that charged constitutes proof of the culpability charged. The State establishes that a defendant acted recklessly if it proves the defendant acted knowingly or intentionally.

Appeal from Wyandotte District Court; J. DEXTER BURDETTE, judge. Opinion filed September 10, 2021. Affirmed.

*Randall L. Hodgkinson,* of Kansas Appellate Defender Office, argued the cause, and *Sam Schirer,* of the same office, was with him on the briefs for appellant.

*Daniel G. Obermeier,* assistant district attorney, argued the cause, and *Lois Malin*, assistant district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

WILSON, J.: Bruce T. Shockley was convicted of felony murder, criminal discharge of a firearm, and criminal possession of a firearm. As a result, he received a hard 25 life sentence consecutive to 216 months in prison. Shockley now appeals on theories of speedy trial violations and insufficient evidence. Finding no error, we affirm his convictions.

FACTUAL AND PROCEDURAL BACKGROUND

Shockley was arrested and charged with his crimes after driving by and firing shots indiscriminately into his ex-girlfriend's house, killing her father. The drive-by occurred after Shockley's ex, Rachel Smith, reported his domestic abuse to law enforcement, prompting Shockley to confront and threaten Smith by text message. Three people riding in the vehicle with Shockley at the time of the shooting would later testify against him at trial.

This case was filed on December 22, 2014, and Shockley was arrested on warrant the next day, when he also had his first appearance. Shockley's

3

preliminary hearing was held February 20, 2015 after which he waived arraignment. A jury trial was then scheduled for June 15, 2015.

Before that trial could happen, Shockley's first attorney was permitted to withdraw. Appearing at a status conference on May 8, 2015, Shockley moved for a continuance of the jury trial because his new counsel needed more time to prepare for trial. The following exchange is from that status conference:

"[DEFENSE COUNSEL]:  Thank you, Judge. Judge, the record probably reflects that I have only very recently entered my appearance in the case. . . .

"I understand, first of all, that there's a problem with the trial date as that is the judicial conference week; so it could not proceed to trial that week nonetheless, but I have just received from the State the discovery. It's voluminous. . . .

. . . .

"So we're going to have to request to continue the [June] trial date. I've explained to my client that if he wants me to be adequately prepared, it will take some time past [June] that will necessitate him waiving his speedy trial to make that happen.

"THE COURT:  Please stand, sir. Do you understand what your right to a speedy trial is?
"MR. SHOCKLEY:  Yes, Your Honor.
"THE COURT:  And you've discussed that with your attorney?
"MR. SHOCKLEY:  Yes, Your Honor.
"THE COURT:  Do you have any questions about that right for either the Court or your attorney?
"MR. SHOCKLEY:  No, Your Honor.
"THE COURT:  And it's your intention to waive that right here today?
"MR. SHOCKLEY:  Yes, sir.

4

"THE COURT:  Please be seated. Thank you. [Prosecutor]?

"[PROSECUTOR]:  Judge, I've talked to [Defense Counsel] about this, and I concur with him. The evidence in this case is quite voluminous. It's two very large three-ring binders, and so I can understand why it would take him some time to go through that. Given that, and given the defendant's waiver of that speedy trial, the State's not objecting to it.

"THE COURT:  Very well. Your motion will be granted for good cause shown, and the Court accepts your client's waiver of his right to a speedy trial.

"Before you leave, get a new trial date, and set it out far enough in advance so that you will have adequate time to prepare.

"[DEFENSE COUNSEL]:  Yes, sir, Thank you.

"THE COURT:  If nothing further, we will be adjourned."

After the hearing and off the record, a new trial date was set to begin September 28, 2015.

On September 24, 2015, the district court held a motion hearing, which included the State's request for a continuance of the jury trial because one of the lead detectives (and an anticipated *Jackson v. Denno* hearing witness) was having medical issues. After discussing the detective's medical issues, the State continued:

"[PROSECUTOR]:  So, given all of that—we do believe she's gonna be available after the surgery, so I don't think there's any issue there. *The defendant did prior waive his speedy trial, so there's no speedy trial issues here either.*

. . . .

". . . So, given those reasons, Judge, the State is asking to continue the trial.

5

"THE COURT: Yes, sir.

"[DEFENSE COUNSEL]: Judge, I submit the state has failed to meet the threshold requirement for a motion to continue. [Prosecutor] indicated there are two detectives in this case, Mansaw and Detective Lynn, and I submit my review of the discovery would indicate that Detective Mansaw could testify essentially to anything that Detective Lynn would testify to and could lay a foundation for my client's statement. So, for those reasons, I submit that the State does not have evidence that is unavailable under—as it's defined by the statute[,] and I would ask the Court to deny his motion to continue.

"THE COURT: Well, based on the allegations of the district attorney, I'm gonna grant his motion for good cause shown. [Prosecutor] does not lightly ask for continuances in this Court, at least that has been my experience.

"[DEFENSE COUNSEL]: (Nodding head up and down.)

"THE COURT: That being the case, I'm granting the motion for good cause shown over the objection of the defendant. And, before you leave, I'd like you to get a new motion hearing date and a new trial date." (Emphasis added.)

Sometime after this hearing, trial was apparently scheduled to begin January 11, 2016. We only know that, however, because of later references in the record and a notation on a docket sheet that indicates the trial was again continued—this time by the court without hearing—to May 9, 2016.

On May 5, 2016, Shockley filed a motion asserting a violation of his statutory right to a speedy trial. On May 6, 2016—three days before the scheduled trial—the district court held a hearing on the motion, which it ultimately denied. During that hearing, defense counsel attempted to have the district court clarify and make rulings on several points, including whether Shockley's waiver on May 8, 2015, was unconditional; if so, whether Shockley's objection to trial continuance on September 24, 2015, reasserted his speedy trial rights; which delays were attributable to whom; and whether Shockley acquiesced to the court's

6

delay. Shockley validly asserted that he was questioning the court because he had the responsibility to create a record which could be reviewed on appeal. See *State v. Espinoza*, 311 Kan. 435, 436, 462 P.3d 159 (2020) ("the defendant bears the responsibility of ensuring that the district court makes adequate factual findings").

It appears from the record that some—but clearly not all—transcripts from the earlier hearings were available to the court at the May 2016 motion hearing. With only three days left before trial, the defense did not want to risk another continuance for the rest of the transcripts to be produced for the court's review. Consequently, the motion hearing proceeded without all the transcripts from the hearings of May 8, 2015, and September 24, 2015.

No additional evidence was presented at the May 6, 2016 motion hearing. After arguments from both counsel, the following exchange occurred:

> "THE COURT: Well, based upon what is before me today, and that does not include transcripts of every hearing and, in fact, I suspect there are no transcripts for at least one of the hearings that I know of, the problem that the defense has, in the Court's opinion, is parties do agree to continuances—
> "[DEFENSE COUNSEL]: (Nodding head up and down.)
> "THE COURT: —and it's a fact and it makes the system work. If there is any problem with a continuance or an agreement to continue, then the defendant and/or the State must make a record and specify an objection. I can find none of those other than the one instance where it was continued over the objection of the defendant and then parties agreed on a new trial date. Is a defendant's waiver of his right to a speedy trial a blanket and unconditional waiver of those rights? I don't think so. But I think in a reasonable sense and in a practical sense, it is a waiver and it is unconditional unless there is specificity referred. There is none.
> "Certainly I don't believe based upon the information in front of the Court that there's been a statutory violation of your client's right to a speedy trial and based upon the

7

case law and also the Court's own practical observations of speedy trial issues, I certainly do not believe that his Constitutional rights to a speedy trial have been violated. Now, you can accept this Court's ruling or you can ask to have all of the transcripts that were made typed up and made available to this Court for review and I will certainly review the same, but this is the Friday before a trial and that's entirely up to the defendant.

"[DEFENSE COUNSEL]:  Couple things, Judge, if I may.

"THE COURT:  Yes.

"[DEFENSE COUNSEL]:  Okay. Thank you. First of all, as you indicated, there was not a transcript—there would not be a transcript from the January 2016 hearing because there was no hearing. So there would be no point in seeking that transcript. The next issue would be is there—well, there would be a transcript from September of 2015. I can say to you with the highest degree of certainty, Judge, that at that point in time, I would not have used some magic words like we are now reasserting my client's speedy trial rights. We objected, said that we were ready to proceed. And so did I say some magic words like that? I highly doubt it and—but I'm gonna ask the Court, if you will indulge me for just a moment, and this is the problem that . . . I've run into in other cases, Judge, and it is I don't make an adequate record here so that I can get perhaps a different ruling at the Court of Appeals or Supreme Court.

"So my first question I'm gonna ask the Court to specify, if you will please, are you concluding that in . . . May of 2015, when we asked for a continuance at that point that was an unconditional waiver of his speedy trial rights?

"THE COURT:  I'm concluding and I'm stating for the record that the defendant waived his rights to a speedy trial on that date and time.

"[DEFENSE COUNSEL]:  Okay. When we came back to court in September of 2016—2015, and assuming that I think it's probably reasonable to conclude that I did not say some magic words like we are now reasserting, . . . did the objection to the State's request for continuance by those very words reassert my client's speedy trial rights or do you feel that it would have required or is your legal conclusion that it would have required some additional language by the defendant to reassert his speedy trial rights?

"THE COURT:  Well, you did object to the continuance in September and it was over—I made sure the record reflected that it was over the objection of the defendant because you appeared to be ready to go to trial. The State had problems with[,] it

8

appears[,] a material witness and, at that point in time, I'm not sure that based upon what's before me here today I can answer your question. I don't know—

"[DEFENSE COUNSEL]: (Nodding head up and down.)

"THE COURT: —because of the, as I mentioned, the Friday before trial and I haven't had a chance to research that particular issue on my own.

"[DEFENSE COUNSEL]: Okay.

"THE COURT: And based upon what I've seen from both of you, it's one side says yes, one side says no. But the pattern of conduct in this case, I can find no issue with the State in trying to violate your client's [speedy trial right] there's nothing of an intentional nature. So I don't know the answer to your question—

"[DEFENSE COUNSEL]: Okay.

"THE COURT: —that I can specify with the amount of time I've had to prepare. So based upon that, I'm not gonna grant what you request for the record.

"[DEFENSE COUNSEL]: No, I—I'm sorry, Your Honor—I understand. . . . I'm just trying to—

"THE COURT: Sure you are.

"[DEFENSE COUNSEL]: —pin down certain factual legal conclusions so that should my client proceed to trial on Monday and be convicted, if that happens, that this issue is adequately preserved for appeal because that's again the problem I've run into in the past that we don't get certain findings made with greater specificity. And I understand your inability to do so."

The district court seemed to make a finding that Shockley must have acquiesced to the court's crowded docket delay in January because there was no objection on the record:

"[DEFENSE COUNSEL]: Okay. So that being the case, because it was a Court's continuance, is it your legal conclusion that my client's failure to object at that time equaled acquiescence?

"THE COURT: If he acquiesced in the agreed upon continuance to the new date as opposed to a 30 day date, then, yes, I think he did acquiesce—

9

"[DEFENSE COUNSEL]:  Okay.

"THE COURT:  —in the continuance.

"[DEFENSE COUNSEL]:  Understood. Okay. Well, again, like I said . . . so that the record is clear, should it proceed to a higher court at some point in time, I just need—

"THE COURT:  Sure.

"[DEFENSE COUNSEL]:  —to make those findings. And, of course, my counter argument to the Court's conclusion on the acquiescence or the trial date is the defendant, of course, has no affirmative duty to see to it that his case proceeds to trial within a speedy trial time. And I think it would have been incumbent upon the State in January, 2016, to say this case needs to get to trial in 30 days, not in three months.

"THE COURT:  And unless the defendant agreed to the continuance.

"[DEFENSE COUNSEL]:  Okay. All right. Thank you, Judge."

At the end of the hearing, the court denied Shockley's motion to dismiss.

The case proceeded to trial, after which Shockley was convicted and sentenced. As previously mentioned, Shockley now appeals on theories of speedy trial violations and insufficient evidence.

ANALYSIS

*There was no violation of Shockley's statutory right to a speedy trial.*

Shockley argues that the combined effect of the multiple delays resulted in a violation of his statutory right to a speedy trial. He argues, in turn, that the waiver of his speedy trial rights—given prior to his own requested continuance—was not an unconditional waiver and, even if this court decides it was, he reasserted his right to a speedy trial in September 2015 because he objected to the State's continuance. He would

10

have this court decide that the delays after that objection are not subject to his prior waiver.

Shockley's speedy trial claim was litigated in district court when he filed a motion requesting discharge from prosecution due to a violation of his statutory right to a speedy trial, which the district court denied at a pretrial hearing. As a result, Shockley has preserved this issue for appeal.

*Standard of Review*

Shockley's statutory argument presents a question of law subject to unlimited review. *State v. Dupree*, 304 Kan. 43, 48, 371 P.3d 862 (2016) (quoting *State v. Vaughn*, 288 Kan. 140, 143, 200 P.3d 446 [2009]) ("[T]he computation of days to be assessed against the so-called speedy trial clock—requires some level of statutory interpretation and thus is reviewed de novo."). But to the extent the outcome relies upon a factual finding by the district court, this court determines if the factual finding is supported by substantial competent evidence. *State v. Edwards*, 291 Kan. 532, 537, 243 P.3d 683 (2010). This is defined as "such legal and relevant evidence as a reasonable person might regard as sufficient to support a conclusion." *Hodges v. Johnson*, 288 Kan. 56, 65, 199 P.3d 1251 (2009). An appellate court does not reweigh conflicting evidence, evaluate witness credibility, or determine questions of fact, and the court presumes the district court found all facts necessary to support its judgment. *Hodges,* 288 Kan. at 65.

*Discussion*

Shockley's statutory claim arises under K.S.A. 2020 Supp. 22-3402(a), which states:

"If any person charged with a crime and held in jail solely by reason thereof shall not be brought to trial within 150 days after such person's arraignment on the charge, such person shall be entitled to be discharged from further liability to be tried for the crime charged, unless the delay shall happen as a result of the application or fault of the defendant or a continuance shall be ordered by the court under subsection (e)."

"The State bears the responsibility to ensure a defendant is afforded a speedy trial in compliance with K.S.A. 22-3402; a defendant does not need to take any affirmative action to ensure a speedy trial." *Dupree*, 304 Kan. at 49 (citing *State v. Adams*, 283 Kan. 365, 369, 153 P.3d 512 [2007]).

As K.S.A. 2020 Supp. 22-3402(a) dictates, and *Dupree* clarifies, a defendant's position begins with his right to a speedy trial. The burden to protect that right lies squarely on the shoulders of the State. The defendant need do nothing. Under the statute, the clock begins at arraignment (or waiver of arraignment, if that is the case).

Though a defendant need do nothing to preserve this statutory right, he may have good reason to wish for a delay of trial. Contrary to the lack of action needed to preserve his right, a defendant's action and participation is required to waive it. Any delays that result from the request of the defendant toll the State's deadline for trial. Notably, "a defendant's waiver of the right to a speedy trial extends not only to a defendant's request for a continuance but also is effected by a defendant's 'acquiescing in the grant of a continuance.'" *Vaughn*, 288 Kan. at 144 (citing *State v. Brown*, 283 Kan. 658, 662, 157 P.3d 624 [2007]). However, within the context of a waiver:

"[This court has] never held that passive acceptance of a continuance waives a defendant's speedy trial rights. Such a notion is inconsistent with our decisions holding

12

that a defendant is not required to take any affirmative action to see that his or her right to a speedy trial is observed. As the Kansas Court of Appeals explained in *State v. Arrocha*, 30 Kan. App. 2d 120, 127, 39 P.3d 101, *rev. denied* 273 Kan. 1037 (2002): 'If the defense stands silent, neither advocating nor acquiescing in delay, . . . the State must beware. In such circumstances, prosecutors and the district courts are well advised to put consideration of the applicable time limit in the speedy trial statute on the record.' [Citations omitted.]" *Vaughn*, 288 Kan. at 145.

At the May 2015 hearing, neither silence nor acquiescence was an issue. There are two things that are clear. First, Shockley was purposefully and actively waiving his right to a speedy trial—at least to some extent. Second, the reason Shockley wanted to waive his right to a speedy trial was because his attorney would not be ready for trial by the time it was scheduled to begin.

The extent to which Shockley wished to waive his right in that hearing is less clear. He now claims his *reason* for the waiver, and the *fact* that trial was later scheduled for another date, combine to indicate *in context* that he waived his right only until September 28, 2015—the rescheduled date for trial. The State claims the defendant made no such limitation, and thus his waiver was complete and unconditional.

Shockley draws support from *City of Shawnee v. Patch*, 33 Kan. App. 2d 560, 561, 105 P.3d 727 (2005), where the Court of Appeals determined that a speedy trial waiver was *not* unconditional when it was made in connection with an agreed continuance that would bring the matter before the court again on a date certain. In *Patch*,

"[t]he parties stipulated that Patch agreed to waive his right to a speedy trial in connection with an agreed continuance that would bring the matter before the court again on June 20, 2002. Unlike [an] open-ended waiver, Patch's waiver was predicated upon the matter

13

being reset for June 20, 2002, and therefore not unconditional." *Patch*, 33 Kan. App. 2d at 562-63.

But *Patch* is distinguishable from our present case where Shockley did not clearly condition his waiver upon a date certain. In factually similar cases, this court has found that where a defendant has waived his right to a speedy trial in conjunction with a request for a continuance—but a specific date has *not* already been established at the time of the waiver—that waiver was not conditioned and thus continued past even the trial date established by the continuance. See *State v. Bloom*, 273 Kan. 291, 307-10, 44 P.3d 305 (2002) (defendant agreed to waive his right to speedy trial and allow trial to be set "down the road aways" to give his new counsel additional time to prepare for trial); *State v. Smallwood*, 264 Kan. 69, 72, 955 P.2d 1209 (1998) (defendant orally waived his right to speedy trial to fit trial in with court docket, agreeing to "whatever date [the court] set it"). Shockley's case is analogous to *Bloom* and *Smallwood.* As with these cases, Shockley did not waive his rights to a speedy trial with a specific date laid out. A new trial date was found *after* the court accepted his waiver.

As we have previously explained:  "*Smallwood, Patch*, and *Bloom* stand for the proposition that defendants who have waived their right to a speedy trial may condition or revoke their waivers and subsequently raise the speedy trial issue if the State is aware of the conditions or the revocation." *State v. Mitchell*, 285 Kan. 1070, 1082, 179 P.3d 394 (2008). These cases illustrate an important point. If the defendant chooses to waive his speedy trial rights and does not otherwise say so, we must presume the waiver is unconditional. As we stated in *Mitchell*, the defendant can certainly condition or limit that waiver, but the State *must* be aware of the conditions. In this instance, Shockley did not say that his waiver was effective only for a limited length of time or condition the waiver upon the occurrence of an event or date certain. He simply did not clarify a condition on his waiver.

14

We are not—as the dissent suggests—creating a new rule that the defendant *must* agree to a new trial date on the record to make his waiver conditional. Likewise, there are no "'magic words'" or "'particular words of art'" that must be used to condition a waiver. Rather, we hold that any conditions placed on a waiver made by the defendant *must* be clear and unambiguous. As we have stated, and as the dissent agrees, the burden to protect the defendant's statutory speedy trial rights rests solely on the shoulders of the State with the parameters of that burden defined by statute. The burden does not shift even when a delay is attributed to the court. *State v. Queen*, 313 Kan. 12, 24-25, 482 P.3d 1117 (2021). When the defendant chooses to modify the parameters of that burden, as he often has good reason to do, he must be clear.

The dissent is perhaps correct that clarity of a condition or its parameters might be pulled from context under the facts of a particular case. That case is not this one. The existence of any condition to Shockley's waiver—let alone its parameters—was not clear at all. Lack of clarity is to the peril of the defendant. Were it not, there would undoubtedly be some incentive for a defendant to be coy. After all, confusion may lead to judicial disagreement about contextual clarity of a defendant's waiver with an ultimate result being complete dismissal of the charges.

The dissent notably fails to reconcile its preferred outcome with the very cases it acknowledges are precedential to this issue. We fail to see how, factually, Shockley's case is different from *Bloom* and *Smallwood*, where the *reason* for the waiver was clear—a defense continuance necessary to prepare counsel for trial—but a clear or explicit condition was not placed on that waiver.

15

In the absence of an explicit condition, Shockley—and the dissent—would have us take an about-face away from *Bloom* and *Smallwood*, to form a presumption that because his waiver was made in conjunction with a defense continuance, the same waiver is inherently limited to that single continuance. We are not persuaded. The defense continuance may have been the *reason* Shockley chose to waive his statutory speedy trial rights, but it was not inherently a condition or limit he placed upon that waiver, and this court will not accept the defendant's invitation to fill the gap. Once the defendant first chooses to waive his right to a speedy trial, he faces a legal presumption that the waiver is unconditional. To make the waiver conditional, he must rebut the presumption. He does this by clarifying *any* limitations or conditions on that waiver. Without that clarity, the presumption remains intact and the waiver is unconditional.

This legal presumption is a fair rule. By his own volition, the defendant has stopped the speedy trial clock. It is justifiably his responsibility to be clear about when it starts back up again. His right to a speedy trial is not harmed by the coexistent obligation to place the State on notice—in a clear and unambiguous manner—of the moment at which the State must be cognizant that the clock is again ticking.

Due to the lack of clarity established by the defendant concerning the parameters of his waiver, the trial court concluded that the presumption operated to determine that Shockley's waiver on May 8, 2015, was unconditional. We agree.

Shockley next claims that even if his waiver of his speedy trial rights was unconditional at the time it was made, his objection to the State's continuance was a revocation of that waiver and should have put the State on notice that he was reasserting his speedy trial rights.

16

The State requested its continuance because one of two primary detectives in the case was having medical issues. The State offered that it would need this witness to proceed on a motion to suppress and a *Denno* motion, and that the detective would be available after surgery. The State also reminded the district court that Shockley had previously waived his speedy trial rights.

Almost immediately thereafter, Shockley's counsel objected, stating that the State failed to "meet the threshold requirement for a motion to continue," largely because the other detective was still available and could lay a foundation.

Neither Shockley nor the State address the fact that Shockley's objection was not clearly on speedy trial grounds. Shockley rests on the idea that any objection to the State's continuance is enough to alert the State that he was reasserting his speedy trial rights. The problem with Shockley's argument is that while he did object to the State's continuance, the basis for his objection was not clear. That basis matters.

It is important to distinguish between the rules of criminal procedure and a defendant's right to a speedy trial. We have established that Shockley's waiver was unconditional. Shockley retains the right to place conditions upon that waiver by limiting the length of time the statutory right is tolled. However, the rule still requires Shockley to be clear about what he is doing and when. In that way, the State will have notice that the speedy trial clock is again ticking and will be in the best position to protect the defendant's right. The *right* is not compromised by the *rule* that requires the defendant to give clear notice to the State that the heretofore unconditional waiver has been revoked. In fact, the opposite is true; the right is better protected by the rule.

17

There are several reasons the basis for Shockley's objection to the continuance was not clearly based on speedy trial grounds. First, and most obviously, Shockley's counsel did not say the words "speedy trial." After the prosecutor had *just said* that the defendant had waived speedy trial, and *further said* there were no speedy trial issues, defense counsel merely stated the State "failed to meet the threshold requirement for a motion to continue" and "the State does not have evidence that is unavailable under—as it's defined by the statute." The court then granted the motion to continue for "good cause."

We explore further. Article 34 of K.S.A. Chapter 22 governs "Trials and Incidents Thereto." K.S.A. 22-3401 generally addresses "Time of Trial." It states: "All persons charged with crime shall be tried without unnecessary delay. *Continuances may be granted to either party for good cause shown*." (Emphasis added.) Good cause for a continuance could be for any number of reasons, not necessarily related to speedy trial. Thus, the "threshold requirement for a motion to continue," which defense counsel asserted was lacking, can be interpreted to mean "good cause," pursuant to K.S.A. 22-3401. The court found there was good cause, but the only cause mentioned was the witness' medical problem.

It is possible to assume defense counsel's next statement about the unavailability of evidence referred to the "speedy trial" statute at K.S.A. 2020 Supp. 22-3402(e)(3), which allows the time of trial to be extended when "there is material evidence which is unavailable." However, K.S.A. 60-459(g)(3), a rule of evidence applicable to criminal hearings, also defines "unavailable as a witness" to include the situation when the witness is "unable to be present or to testify at the hearing because of . . . then existing physical or mental illness." Therefore, it is just as logical to assume that defense counsel was only arguing the prosecutor's proffer was insufficient to establish the witness' unavailability as a witness.

18

The resulting lack of clarity again causes this court to rely on the rules established in caselaw. Once an unconditional waiver has been made, it is the defendant's responsibility to place the State on notice of any change to that waiver. That notice need not contain "magic words," but it is the defendant's responsibility to ensure the message is clear. Without clarity, the law defaults to the presumption that the waiver is, and remains, unconditional.

In terms of statutory speedy trial issues, we already hold the State to a high standard. The responsibility to make sure the speedy trial deadline is met rests squarely on the shoulders of the State, and the defendant does not need to take any affirmative actions to preserve his speedy trial rights. But it also cannot be a guessing game for the State. Just as the State is entitled under the rules to be aware of any conditions or limits placed on a waiver, it is also entitled to clear and timely notice if a previous waiver is revoked. *Mitchell*, 285 Kan. at 1082.

The last trial delay which occurred was apparently due to the district court's schedule. The record is almost completely silent regarding that crowded docket continuance. The only entry is the Register of Actions Report, which says: "Hearing result for Jury Trial continued on 01/11/2016 09:00 AM: Case unable to reach, the Court continues the case to 5/9/16 at 9:00 A.M., #1 set."

Regardless, we find this delay has no impact on Shockley's statutory speedy trial claim, because at that point, the district court was operating under Shockley's unconditioned waiver which had never been revoked and thus was still in effect. As such, there was no violation of his statutory right to a speedy trial.

19

Shockley's final claim pushes back on that finding, to assert that he did not have the opportunity to object or clearly revoke the prior waiver of his right to a speedy trial because the court did not have a hearing. We are not persuaded.

The dissent emphasizes that Shockley was deprived of an opportunity to reinvoke his right to a speedy trial, drawing from cases including *State v. Wright*, 305 Kan. 1176, 1178, 390 P.3d 899 (2017), and *State v. Brownlee*, 302 Kan. 491, 508, 354 P.3d 525 (2015), to state that he needed to be present for the continuance. But unlike those cases—where the speedy trial clock was still ticking—Shockley's case was operating under an unconditional waiver. Moreover, the court has clear statutory authority to impose a crowded docket continuance. See K.S.A. 2020 Supp. 22-3402(e)(4). While a hearing in January 2016 would have provided a platform for the defendant to voice his clear revocation, it was not the only platform available to him. Notice of revocation can be filed with the clerk of the court at any time. So long as such a pleading is appropriately served on the State, the written notice provided by that pleading would operate to accomplish the defendant's purpose of starting the speedy trial clock once again.

We would also note that there is no information in the record regarding this continuance other than simply: the trial was continued. We presume, as we must, that the defendant was absent. *State v. Herbel*, 296 Kan. 1101, 1107-08, 299 P.3d 292 (2013) (court will presume defendant not present when record does not affirmatively reflect presence). But we still have no idea what exchanges might have occurred between counsel and the court concerning this continuance. As the dissent agrees, any potential prejudice is a discussion not before this court today. Regardless, it does not impact the outcome of Shockley's statutory speedy trial claim.

*There was no violation of Shockley's constitutional right to a speedy trial.*

Next, Shockley argues that because he spent almost 17 months in jail from the time of his arrest to the time of his first trial, his constitutional right to a speedy trial was violated. This question was raised by Shockley at the district court level and is thus properly preserved for appellate review.

*Standard of Review*

As a matter of law, appellate courts have unlimited review when deciding if the State has violated a defendant's constitutional right to a speedy trial. *State v. Hayden*, 281 Kan. 112, 126-27, 130 P.3d 24 (2006).

*Analysis*

Both the Sixth Amendment to the United States Constitution and section 10 of the Kansas Constitution Bill of Rights guarantee defendants the right to speedy trials. But this right is not viewed under the same microscope as is, for example, the right of a defendant to remain silent. As succinctly clarified by Justice Powell:

> "The right to a speedy trial is generically different from any of the other rights enshrined in the Constitution for the protection of the accused. In addition to the general concern that all accused persons be treated according to decent and fair procedures, there is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused." *Barker v. Wingo*, 407 U.S. 514, 519, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972).

The societal interest in a speedy trial may include clearing backlogs, reducing the time a dangerous person is in the community awaiting trial, or reducing jail

21

overcrowding. Society's interest is also furthered by reducing confinement of persons who may have been wrongly accused—also awaiting trial, and minimizing unnecessary loss to a defendant of housing or employment while he sits in jail.

This constitutional right is also somewhat unique because it presents a double-edged sword. A long delay of trial may benefit the defendant. An unfavorable witness' memory may fade. A false witness may reconsider and recant. An unfavorable witness may eventually become unavailable to testify.

Finally, the right itself is vague. While the statutory right to a speedy trial in Kansas is clearly defined by the Legislature with strict parameters, the constitutional right to a speedy trial is considerably less rigid. What is speedy? What is speedy enough? Can a trial be too speedy?

The answer provided by the United States Supreme Court is that of "a balancing test, in which the conduct of both the prosecution and the defendant are weighed." *Barker*, 407 U.S. at 530.

> "A balancing test necessarily compels courts to approach speedy trial cases on an *ad hoc* basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.

> "The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the

right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case." *Barker*, 407 U.S. at 530-31.

"Kansas adopted the *Barker* four-point test in *State v. Otero*, 210 Kan. 530, 532-33, 502 P.2d 763 (1972)." *State v. Jamison*, 248 Kan. 302, 306-07, 806 P.2d 972 (1991).

In weighing the *Barker* factors, the court must consider them together along with any other relevant circumstances, because none of the factors alone is sufficient for finding a violation. However, the length of the delay could be determinative of the claim, because "[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *State v. Rivera*, 277 Kan. 109, 113, 83 P.3d 169 (2004). In other words, there has been no violation of a defendant's constitutional right to a speedy trial if there has not been a delay that is presumptively prejudicial. If the delay is presumptively prejudicial, there *might* be a violation of the right, depending on how the conduct of both the prosecution and the defense weigh in the balancing test under the facts of a particular case.

Thus, we first analyze whether the length of the delay in this case establishes a presumptively prejudicial delay of Shockley's trial. If so, we look further. If not, Shockley's constitutional right to a speedy trial has not been violated, and the inquiry ends.

*Length of Delay*

Shockley argues that the prosecution of his case is "as straight-forward as a murder case could be," because the State is simply relying on eyewitness testimony of those riding in the car with Shockley when he committed the offenses. Thus, he argues,

the nearly 17-month time period from arrest to trial is presumptively prejudicial. The *Barker* test informs:

> "[B]ecause of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case. To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Barker*, 407 U.S. at 530-31.

The State rebuts, opining that felony murder—regardless of how straightforward the prosecution might be—is not "an ordinary street crime." The State argues that out of the 16.5 months before Shockley was brought to trial, at least 5 of them are because of Shockley's own continuance.

Both parties cite to *State v. Mathenia*, 262 Kan. 890, 894-95, 942 P.2d 624 (1997), where a delay of 23 months was found to be *not* presumptively prejudicial in a first-degree murder case. The *Mathenia* court emphasized that the inquiry is necessarily dependent upon the circumstances of the case. In that case, the crimes arose from a group attack by inmates upon two correctional officers. There were inmate interviews and physical evidence being processed right up to the grand jury proceedings. There were over 600 statements concerning the investigation, with approximately 30 inmates considered as viable suspects for the attacks. The investigation resulted in the indictment of 12 inmates with 7 cases going to jury trial. As that court put it, "[t]o say that this case involved a complex, serious crime would be an understatement." *Mathenia*, 262 Kan. at 895.

By contrast, this court found that a 15-month delay *was* presumptively prejudicial in a case where the defendant was charged with possession of cocaine with intent to sell

and the State's case consisted of only 64 pages of testimony. *State v. Weaver*, 276 Kan. 504, 510-11, 78 P.3d 397 (2003).

Shockley's case falls somewhere in-between. At his initial trial in May 2016, 14 witnesses and 98 exhibits were introduced before a mistrial was declared. At a second trial, the State presented 26 witnesses and introduced 168 exhibits over four days. There was certainly a warranted level of complexity to this case.

The *Barker* Court cautions that the right to a speedy trial is necessarily relative and while it secures rights to a defendant, it does not preclude the rights of public justice. It is not to be taken lightly, because it has serious consequences where a defendant who may be guilty of a serious crime will go free, although that is the only possible remedy when the right *has* been violated. *Barker*, 407 U.S. at 522.

Considering the evidence in this case, we find that the length of the delay was not presumptively prejudicial. Given that finding, *Barker* holds that we need not analyze further. Shockley has not shown that level of prejudice necessary to support a violation of his constitutional right to a speedy trial. Consequently, we find there was no violation of Shockley's constitutional right to a speedy trial.

*There was sufficient evidence to support Shockley's convictions for felony murder and criminal discharge of a firearm.*

The district court submitted instructions allowing the jury to convict Shockley of criminal discharge of a firearm—and thus felony murder—upon a finding that he recklessly discharged a firearm at a dwelling. For his final issue on appeal, Shockley asserts the evidence presented at trial shows that Shockley intentionally, not recklessly,

25

fired the rifle at Smith's house. He argues the result is insufficient evidence to show reckless conduct as charged, so the court must reverse his convictions.

There is no requirement for a defendant to challenge the sufficiency of evidence before a district court to preserve the issue for appeal, a point which the State concedes. *State v. Farmer*, 285 Kan. 541, Syl. ¶ 1, 175 P.3d 221 (2008).

*Standard of Review*

When sufficiency of the evidence is challenged in a criminal case, an appellate court's standard of review is whether the court is convinced that a rational fact-finder could have found the defendant guilty beyond a reasonable doubt when reviewing all trial evidence in a light most favorable to the prosecution. *State v. Davis*, 306 Kan. 400, 408, 394 P.3d 817 (2017). Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations. *State v. Woods*, 301 Kan. 852, 874, 348 P.3d 583 (2015).

*Discussion*

Shockley acknowledges that the wording of a complaint is binding on the State in pursuing its theory before a jury. *State v. Trautloff*, 289 Kan. 793, Syl. ¶ 4, 217 P.3d 15 (2009). In Shockley's case, both the information and the jury instructions contain the same language:  that he discharged a firearm at a dwelling and that he did so recklessly and without authority.

Shockley argues that the State's theory of prosecution was that he *intentionally* fired the rifle at Smith's house as an act of revenge, and the testimony of all three

witnesses supports that theory because "it would defy belief to think that *that* someone *repeatedly* fired a gun at Ms. Smith's house on accident." Further, Shockley argues, a person cannot act both intentionally and recklessly with respect to the same act, and the guilt of one negates the guilt of the other. *State v. O'Rear*, 293 Kan. 892, 903, 270 P.3d 1127 (2012). Shockley submits that the State is required to prove the crime defined in a jury's elements instruction, relying on *State v. Robinson*, 27 Kan. App. 2d 724, 8 P.3d 51 (2000).

But *Robinson* is distinguishable. That court was dealing with a robbery case. Under Kansas law, it is robbery if property is taken either from a victim's person or in the presence of the person. *Robinson* held that where a jury instruction only includes the "person" language and omits the "presence" language, the State must prove a taking from the victim's person—despite both acts being criminal in Kansas. *Robinson*, 27 Kan. App. 2d at 727-29.

Shockley's arguments fall short. First, a finding of recklessness does not necessitate that the jury find Shockley fired at Smith's house on accident. The jury instructions provided that a "defendant acts recklessly when the defendant consciously disregards a substantial and unjustifiable risk that certain circumstances exist." Further, since this court authored *O'Rear*, the Legislature has clarified an important criminal statute:

> "(a) Except as otherwise provided, a culpable mental state is an essential element of every crime defined by this code. A culpable mental state may be established by proof that the conduct of the accused person was committed 'intentionally,' 'knowingly' or 'recklessly.'
>
> . . . .

27

"(c) Proof of a higher degree of culpability than that charged constitutes proof of the culpability charged. If recklessness suffices to establish an element, that element also is established if a person acts knowingly or intentionally. If acting knowingly suffices to establish an element, that element also is established if a person acts intentionally." K.S.A. 2020 Supp. 21-5202(a), (c).

Shockley attempts to avoid defeat by this statute with a single conclusory statement—because the jury was not given an instruction which informed it that evidence of knowing or intentional conduct sufficed to prove reckless conduct, it was not instructed in a way which allowed it to make a reasonable finding supported by trial evidence. Yet despite this statement, Shockley does not argue there was any jury instruction error.

Shockley does not cite any legal authority to show the jury needs to be informed that knowing or intentional conduct is sufficient to establish recklessness. He also fails to make specific references to the trial evidence which show support for intentional acts rather than reckless acts, instead relying on his general recitation of the trial evidence as a whole.

This situation is definitely one contemplated by the statute. "The statute makes clear that the State can establish that a defendant acted recklessly if it proves that the defendant acted knowingly or intentionally." *State v. Gentry*, 310 Kan. 715, 733, 449 P.3d 429 (2019). As the State points out, all three witnesses testified to Shockley's acts and not his *mens rea*. When viewed in a light most favorable to the prosecution, a rational fact-finder could find Shockley guilty of the charged acts beyond a reasonable doubt. We find no error.

Affirmed.

* * *

STANDRIDGE, J., dissenting: I respectfully dissent from the majority's legal conclusion that Shockley was not deprived of his statutory right to a speedy trial because he unconditionally waived that right. The majority opinion sets forth a transcription of the relevant parts of the May 8, 2015, hearing during which the waiver occurred. I summarize some of these relevant passages below to provide context for my own analysis:

- Shockley's newly appointed counsel moved for a continuance of the June 15, 2015, trial setting because he needed time to get up to speed. Counsel stated, "I've explained to my client that if he wants me to be adequately prepared, it will take some time past July that will necessitate him waiving his speedy trial to make that happen."

- Immediately after defense counsel's statement and after Shockley had an opportunity to speak with counsel, the court engaged in a colloquy to verify that Shockley intended to waive his right to a speedy trial.

- The State did not object. Rather, it noted that the evidence was voluminous and would take some time to get through.

- The court then specifically instructed the parties: "Before you leave, get a new trial date, and set it out far enough in advance so that you will have adequate time to prepare."

29

- After the hearing and off the record, a new trial date was set for September 28, 2015.

After citing to these passages, the majority states, "[T]wo things . . . are clear," from the May 8, 2015, hearing: "First, Shockley was purposefully and actively waiving his right to a speedy trial—at least to some extent. Second, the reason Shockley wanted to waive his right to a speedy trial was because his attorney would not be ready for trial by the time it was scheduled to begin." Slip op. at 13. The majority also acknowledges that "[a]fter the hearing and off the record, a new trial date was set to begin September 28, 2015." Slip op. at 5.

Curiously, however, the majority goes on to conclude that Shockley's clearly expressed reason for his waiver—in conjunction with a new definitive trial date— necessarily establishes that his jury trial waiver was *unconditional*. In support of this conclusion, the majority distinguishes the facts presented here from the facts in *City of Shawnee v. Patch*, 33 Kan. App. 2d 560, 561, 105 P.3d 727 (2005). Shockley relied on *Patch* to support his position that, in context, his waiver was limited to the time between the May 2015 hearing and the new September 2015 trial date. Specifically, the majority notes that in *Patch*, the defendant agreed to waive his speedy trial right in connection with an agreed continuance that would bring the matter before the court on a date certain instead of the open-ended waiver that Shockley agreed to here. Slip op. at 13-14.

But the record does not support the majority's characterization of Shockley's waiver in May 2015 as "open-ended." Instead, the transcript of the May 2015 hearing shows that Shockley requested a continuance to get his new attorney up to speed—a fact which the majority acknowledges—and the parties set a new trial date immediately after

30

the court went off the record. Based on this inconsequential distinction, the majority creates a new legal rule in the context of speedy trial waivers: If a defendant waives speedy trial rights in conjunction with a requested continuance without agreeing to a new trial date *on the record*, the defendant's waiver is wholly unconditional for the rest of time unless otherwise revoked. The majority summarily denies that it is creating such a rule, but the denial rings hollow in the absence of any analysis explaining how its holding can be construed any other way. And under the majority's new rule, it matters not that the new trial date was set within minutes of going off the record, which appears to be what happened in this case. This new rule created by the majority is arbitrary and legally unsound.

After distinguishing the facts in *Patch*, the majority applies the following legal principles, which it construes to be mandated by our precedent in *State v. Mitchell*, 285 Kan. 1070, 1082-83, 179 P.3d 394 (2008), *State v. Bloom*, 273 Kan. 291, 307-10, 44 P.3d 305 (2002), and *State v. Smallwood*, 264 Kan. 69, 74-75, 955 P.2d 1209 (1998):

- "Once the defendant first chooses to waive his right to a speedy trial, [the defendant] faces a legal presumption that the waiver is unconditional." Slip op. at 16.

- "To make the waiver conditional, [the defendant] must rebut the presumption." Slip op. at 16.

- "[The defendant] does this by clarifying any limitations or conditions on that waiver." Slip op. at 16.

31

- "Without that clarity, the presumption remains intact and the waiver is unconditional." Slip op. at 16.

But these legal principles, which as a matter of first impression establish a rebuttable presumption of unconditional waiver, are not found within any of the cases upon which the majority relies. The court in *Mitchell* held that defendants who have waived their statutory right to a speedy trial may condition or revoke their waivers and subsequently raise the speedy trial issue if the State is aware of the conditions or the revocation. 285 Kan. at 1082-83. The court in *Bloom* found an unconditional waiver when the defendant agreed to waive his right to speedy trial and allow trial to be set "down the road aways" to give his new counsel additional time to prepare for trial. 273 Kan. at 307, 310. Unlike the open-ended agreement to reset the trial "down the road aways" reflected in *Bloom*, the facts here reflect the parties immediately agreed to a date certain for trial in conjunction with the request to continue the trial date so defense counsel could get up to speed on the case. The court in *Smallwood* held that the defendant orally waived his right to speedy trial when, instead of setting a date certain for trial in conjunction with the request to continue the trial date as is the case here, the defendant agreed to an open-ended continuance to fit trial in with the court's docket by consenting to "whatever date [the court] set it." 264 Kan. at 72, 74-75. As is readily apparent, *Bloom* and *Smallwood* are factually distinguishable because they both present open-ended waivers as opposed to the date certain waiver expressed in this case.

Instead of a rebuttable presumption, *Mitchell*, *Bloom*, *Patch*, and *Smallwood* expressly stand for the proposition that defendants may conditionally waive their speedy trial rights "if the State is aware of the conditions." *Mitchell*, 285 Kan. at 1082. The majority's conclusion otherwise—that these cases create a rule establishing that

32

requesting a continuance creates a rebuttable presumption of unconditional waiver—is simply wrong and unsupported by Kansas caselaw or statute.

In further support of its conclusion that Shockley unconditionally waived his speedy trial rights, the majority relies on what it construes to be the trial court's factual finding on this issue at the May 2016 hearing (held one year after the May 2015 waiver). This hearing was held on Shockley's motion asserting a violation of his statutory speedy trial right. The majority finds that "[d]ue to the lack of clarity established by the defendant concerning the parameters of his waiver, the trial court concluded that the presumption operated to determine that Shockley's waiver on May 8, 2015, was unconditional." Slip op. at 16.

Contrary to the majority's finding, the district court did not conclude that a presumption deemed Shockley's waiver on May 8, 2015, to be unconditional. In fact, the court hedged when confronted with the question of whether Shockley unconditionally waived his right to a speedy trial when his counsel requested a continuance on May 8, 2015. Initially, the court commented:

> "Is a defendant's waiver of his right to a speedy trial a blanket and unconditional waiver
> of those rights? I don't think so. But I think in a reasonable sense and in a practical sense,
> it is a waiver and it is unconditional unless there is specificity referred. There is none."

This vague ruling prompted defense counsel to ask for clarification as to whether Shockley had unconditionally waived his right to a speedy trial on May 8, 2015. In response the court commented:

> "I'm concluding and I'm stating for the record that the defendant waived his rights to a
> speedy trial on that date and time."

33

This response again dodged defense counsel's actual question: whether the court viewed Shockley's waiver as *unconditional*. Although defense counsel diligently attempted to get the court to commit to a factual finding on this issue, the court repeatedly dodged it. The record simply does not support the majority's attempt to characterize the court's comments as a ruling one way or another.

Based on this court's precedent, I believe the outcome here turns on whether the undisputed facts establish that: (1) Shockley conditionally waived his speedy trial rights from the date he requested the continuance to the September 2015 trial setting; and (2) the State was aware of the conditional waiver. As defense counsel readily concedes to the trial court, he did not expressly say that his client was only waiving his speedy trial right until the new trial date. But in context, that is precisely what defense counsel said and it is unreasonable to conclude that the State was not aware that the waiver was given in this context. The majority concludes otherwise, finding "Shockley did not say that his waiver was effective only for a limited length of time, or condition the waiver upon the occurrence of an event or date certain. He simply did not clarify a condition on his waiver." Slip op. at 14.

But there is no authority for the majority's proposition that context is irrelevant, and a statutory jury trial waiver is conditional only if "magic words" or "particular words of art" are used. Although the majority insists that magic words or particular words of art are not required to put conditions on a waiver, it then emphasizes that the defendant has the burden to be "clear and unambiguous" in placing conditions on a waiver. This analysis is, at best, circular and, in fact, actually supports my position that magic words truly are required by the majority. And to require a defendant to use magic words when the context is clear is at odds with our precedent on this issue. See *Mitchell*, 285 Kan. at 1082 (citing *Smallwood*, *Patch*, and *Bloom* to hold that defendants may conditionally

34

waive their speedy trial rights if the State is aware of the conditions). On this point, I reiterate what the majority already acknowledged: "The State bears the responsibility for ensuring that the accused is provided with a speedy trial in accordance with K.S.A. 2006 Supp. 22-3402. The defendant is not required to take any affirmative action to ensure that his or her right to a speedy trial is observed." *State v. Adams*, 283 Kan. 365, 369, 153 P.3d 512 (2007). Requiring a defendant to use magic words when the context is clear necessarily erodes the State's burden to the point where it practically eliminates the burden altogether. For these reasons, I would find that Shockley's clearly expressed reason for the statutory jury trial waiver—along with a new definitive trial date set immediately after the hearing on the court's directive—necessarily establishes that he intended his jury trial waiver to be conditionally limited to the new trial date in September 2015 and that this context squarely put the State on notice of the conditional nature of the waiver. See *Mitchell*, 285 Kan. at 1082 (defendants may conditionally waive their speedy trial rights if the State is aware of the conditions).

Before concluding, I briefly want to address the majority's failure to address one of Shockley's alternative arguments. For purposes of this argument, Shockley concedes that his waiver was unconditional for purposes of the (1) State's continuance and (2) the court's sua sponte 30-day crowded docket continuance. Nevertheless, Shockley argues he was deprived of his opportunity to reinvoke the purported unconditional waiver when the court delayed the trial on January 11, 2016, without Shockley in attendance.

In response to the defendant's argument on this issue, the majority concedes that a hearing in January 2016 would have provided Shockley an opportunity to reinvoke the purported unconditional waiver but finds no prejudice because Shockley could have filed a written notice of revocation. In making this finding, the majority fails to address

Shockley's claim that he was deprived of his right to be present on January 11, 2016, when the court decided on its own motion to continue the trial date.

"A criminal defendant's right to be present at every critical stage of the proceedings is guaranteed by both the United States Constitution and Kansas statute." *State v. McDaniel*, 306 Kan. 595, 600, 395 P.3d 429 (2017). "But that right is not unqualified, and it does not exist when the defendant's '"presence would be useless, or the benefit but a shadow."'" 306 Kan. at 601. "This court has observed that the scope of the right to be present is 'influenced by circumstances and context.'" 306 Kan. at 601. This right extends to "'any stage of the criminal proceeding that is critical to its outcome if the defendant's presence would contribute to the fairness of the procedure.'" 306 Kan. at 601. There is no question that "a continuance is a critical stage of trial at which a defendant has a right to be present." *State v. Phillips*, 312 Kan. 643, 676, 479 P.3d 176 (2021) (citing *State v. Wright*, 305 Kan. 1176, 1178, 390 P.3d 899 [2017]). And this court specifically has held that a defendant must have an opportunity to be present to express disagreement with a continuance because a defendant's disagreement matters in the statutory speedy trial analysis. See *State v. Brownlee*, 302 Kan. 491, 508, 354 P.3d 525 (2015) (agreeing that a defendant should be present at a hearing on a defense motion to continue).

Shockley should have been present when the court decided on its own motion to continue Shockley's trial by four months. In the "circumstances and context" of the case, his absence unfairly deprived him of the opportunity to reinvoke his right to a speedy trial. The fact that there was an alternative method for him to do so does not remedy this deprivation. Whether this unfair deprivation resulted in prejudice is a discussion left for another day.

In sum, I would find that Shockley was deprived of his statutory right to a speedy trial because the record in this case establishes that Shockley's waiver was limited to the time period between his request for continuance and the definitive date set for trial as a result of the court granting that continuance. For this reason, I would vacate Shockley's sentence and discharge him from further liability.

ROSEN and BILES, JJ., join the foregoing dissent.